UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONALD GRESHAM,<br><br>Plaintiff,<br><br>v.<br><br>SEI INVESTMENTS MANAGEMENT CORP.,<br>SEI INVESTMENTS CO., SEI INVESTMENTS<br>DISTRIBUTION CO., PROSHARE ADVISORS, LLC,<br>and PROSHARES TRUST,<br><br>Defendants. | § § § § § § § § § § § § § | Civil Action<br><br>No. 3:09-cv-02406-D |

**APPENDIX IN SUPPORT OF DEFENDANTS' AMENDED NOTICE OF
REMOVAL TO UNITED STATES DISTRICT COURT**

Exhibit A -  Amended Index and State Court Documents…………………….…APP 001 - 069

Exhibit B – Plaintiff's Demand Letter dated September 17, 2009………………APP 070 - 073

Exhibit C -  List of New York Securities Actions………………………………APP 074

Exhibit D – Defendants' Notice of Filing Notice of Removal (State Court)……APP 075 - 076

Dated: December 18, 2009

Respectfully submitted,


By: /s/  R. Rogge Dunn
**R. ROGGE DUNN, ESQ.**
State Bar No. 06249500
Email: rdunn@cdklawyers.com
**GREGORY M. CLIFT, ESQ.**
State Bar No. 00795835
Email: gclift@cdklawyers.com
**CLOUSE DUNN KHOSHBIN LLP**
1201 Elm Street, Suite 5200
Dallas, Texas 75270-2142
Tel:  (214) 220-0077
Fax: (214) 220-3833

**ATTORNEYS FOR DEFENDANTS**


Of Counsel:

Robert A. Skinner (*pro hac vice application pending*)
Ropes & Gray LLP
One International Place
Boston, MA  02110
Tel: (617) 951-7000
Fax: (617) 951-7050
robert.skinner@ropesgray.com

## CERTIFICATE OF SERVICE

I hereby certify that on the **18th day of December, 2009**, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

**R. Dean Gresham - Pro Se**
Fineberg/Gresham
3811 Turtle Creek Blvd., Suite 1900
Dallas, Texas 75219

By: /s/ R. Rogge Dunn
      **R. ROGGE DUNN**
      **GREGORY M. CLIFT**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RONALD GRESHAM, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>SEI INVESTMENTS MANAGEMENT CORP., §<br>SEI INVESTMENTS CO., SEI INVESTMENTS §<br>DISTRIBUTION CO., PROSHARE ADVISORS, LLC, §<br>and PROSHARES TRUST, §<br>§<br>Defendants. §<br>§ | Civil Action<br>No. 03:09-cv02406 |

## AMENDED INDEX OF STATE COURT DOCUMENTS

Pursuant to Local Rule 81.1, Defendants hereby submit the following index of documents.

True and correct copies of these documents are attached hereto.

1. Docket Sheet as of December 9, 2009

2. Original Petition (OCA) – filed October 30, 2009

3. Citation issued to SEI Investments Management Corp. – returned November 25, 2009

4. Citation issued to SEI Investments Distribution Co. – no return date

5. Citation issued to SEI Investments Company – no return date

6. Citation issued to ProShare Advisors, LLC – no return date

7. Citation issued to ProShares Trust – no return date

8. Defendant's Special Exceptions and Original Answer – filed December 14, 2009

9. Plaintiff's First Amended Petition, Motion for Level Three Discovery Control Plan, and Request for Disclosure – Filed December 17, 2009



EXHIBIT

**A**

APP 001

Dated: December 18, 2009

Respectfully submitted,

By: /s/  R. Rogge Dunn

**R. ROGGE DUNN, ESQ.**
State Bar No. 06249500
Email: rdunn@cdklawyers.com
**GREGORY M. CLIFT, ESQ.**
State Bar No. 00795835
Email: gclift@cdklawyers.com
**CLOUSE DUNN KHOSHBIN LLP**
1201 Elm Street, Suite 5200
Dallas, Texas 75270-2142
Tel:  (214) 220-0077
Fax: (214) 220-3833

**ATTORNEYS FOR DEFENDANTS**

Of Counsel:

Robert A. Skinner (*pro hac vice application pending*)
Ropes & Gray LLP
One International Place
Boston, MA  02110
Tel: (617) 951-7000
Fax: (617) 951-7050
robert.skinner@ropesgray.com

## CERTIFICATE OF SERVICE

I hereby certify that on the **18th day of December, 2009**, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

**R. Dean Gresham - Pro Se**
Fineberg/Gresham
3811 Turtle Creek Blvd., Suite 1900
Dallas, Texas 75219

By: /s/  R. Rogge Dunn

**R. ROGGE DUNN**
**GREGORY M. CLIFT**

DEFENDANTS' AMENDED INDEX OF STATE COURT DOCUMENTS – Page 2
R:\8\8333\61010\SubPldgs\Fed Court Filings\AMENDED INDEX OF STATE COURT DOCUMENTS.doc

APP  002

Logout  Search Menu  New District Civil Search  Back                    Location : All District Civil Courts    Help

# REGISTER OF ACTIONS
## CASE NO. DC-09-14776

| | | |
|---|---|---|
| **RONALD GRESHAM vs. SEI INVESTMENTS MANAGEMENT CORP et al** | § § § § § | Case Type: **PROFESSIONAL LIABILITY** <br> Subtype: **OTHER PROFESSIONAL LIABILITY** <br> Date Filed: **10/30/2009** <br> Location: **44th District Court** |

---

### PARTY INFORMATION

|  | **Lead Attorneys** |
|---|---|
| **DEFENDANT PROSHARE ADVISORS, L.L.C.,** | DUNN, R ROGGE |
| | *Retained* |
| | 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) |
| **DEFENDANT PROSHARES TRUST** | DUNN, R ROGGE |
| | *Retained* |
| | 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) |
| **DEFENDANT SEI INVESTMENTS COMPANY** | DUNN, R ROGGE |
| | *Retained* |
| | 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) |
| **DEFENDANT SEI INVESTMENTS DISTRIBUTION CO.,** | DUNN, R ROGGE |
| | *Retained* |
| | 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) |
| **DEFENDANT SEI INVESTMENTS MANAGEMENT CORP** | DUNN, R ROGGE |
| | *Retained* |
| | 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) <br> 214-220-3888(W) |

EXHIBIT

1

**PLAINTIFF   GRESHAM, RONALD**

GRESHAM, RICHARD

*Retained*

214-219-8838(W)

---

**EVENTS & ORDERS OF THE COURT**

---

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 10/30/2009 | **ORIGINAL PETITION (OCA)** |
| 11/12/2009 | **ISSUE CITATION COMM OF INS OR SOS** |
| 11/12/2009 | **ISSUE CITATION** |
| 11/13/2009 | **CITATION** |
| | SEI INVESTMENTS MANAGEMENT CORP     served  11/19/2009   returned  11/25/2009 |
| 11/13/2009 | **CITATION SOS/COI/COH/HAG** |
| | SEI INVESTMENTS DISTRIBUTION CO.,     unserved |
| | SEI INVESTMENTS COMPANY     unserved |
| | PROSHARE ADVISORS, L.L.C.,     unserved |
| | PROSHARES TRUST     unserved |
| 12/14/2009 | **ORIGINAL ANSWER - GENERAL DENIAL** |
| 12/17/2009 | **AMENDED PETITION** |

---

**FINANCIAL INFORMATION**

---

**PLAINTIFF** GRESHAM, RONALD

| | | | |
|---|---|---|---:|
| Total Financial Assessment | | | 293.00 |
| Total Payments and Credits | | | 293.00 |
| **Balance Due as of 12/18/2009** | | | **0.00** |

| | | | |
|---|---|---|---:|
| 10/30/2009 | Transaction Assessment | | 237.00 |
| 10/30/2009 | PAYMENT (CASE FEES)    Receipt # 86522-2009-DCLK | SPECIAL DELIVERY | (277.00) |
| 11/12/2009 | Transaction Assessment | | 56.00 |
| 11/12/2009 | PAYMENT (CASE FEES)    Receipt # 90333-2009-DCLK | JOEL M FINEBERG PC | (16.00) |

CAUSE NO. 09-14776



| | | |
|---|---|---|
| RONALD GRESHAM | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| SEI INVESTMENTS MANAGEMENT | § | |
| CORP., SEI INVESTMENTS CO., SEI | § | |
| INVESTMENTS DISTRIBUTION CO., | § | |
| PROSHARE ADVISORS, LLC, AND | § | |
| PROSHARES TRUST | § | **44th-B** |
| | § | |
| Defendants. | § | _____ TH JUDICIAL DISTRICT |

---

## PLAINTIFF'S ORIGINAL PETITION, MOTION FOR LEVEL THREE DISCOVERY CONTROL PLAN, AND REQUEST FOR DISCLOSURES

---

TO THE HONORABLE COURT:

COMES NOW, RONALD GRESHAM hereinafter referred to as "Plaintiff" in the above-entitled and numbered cause, and files this his Original Petition, Motion for Level Three Discovery Control Plan, and Request for Disclosure, complaining of SEI Investments Management Corp., SEI Investments Co., SEI Investments Distribution Co., ProShare Advisors, LLC, and ProShares Trust (collectively referred to as "Defendants"), and in support thereof would respectfully show the Court as follows:

### I.

### BACKGROUND

This is an action to recover money damages from Defendants after Plaintiff lost over six thousand dollars in the ProShares UltraShort MSCI Emerging Markets Fund (hereinafter the

**EXHIBIT**

**2**

APP 005

"EEV Fund"). The EEV Fund is an exchange-traded fund ("ETF")[1] offered by Defendants, pursuant and traceable to their false and misleading Registration Statement, Prospectuses, and/or Statements of Additional Information (collectively, the "Registration Statement") issued in connection with the EEV Fund's shares. Although not sufficiently disclosed by Defendants, the EEV Fund is an investment vehicle that can only be used for day-trading—not for mid or long-term investing.

On November 21, 2008, Plaintiff purchased shares of the EEV Fund at a cost of $105 per share. Almost one year later and after watching the EEV Fund lose more than 80% of its value, Plaintiff sold 70 shares of the EEV Fund at a cost of $11.95 per share, yielding a loss of $6,513.00. As a proximate result of Defendants' acts and/or omissions alleged herein, Plaintiff was damaged in the amount of $6,513.00.

## II.

## MOTION FOR LEVEL THREE DISCOVERY PLAN

Plaintiff hereby moves to conduct discovery in accordance with a discovery control plan tailored to the circumstances of this specific suit.  In the interest of judicial economy and equity, Plaintiff moves to conduct discovery By Order (Level Three) pursuant to Rule 190.4 of the Texas Rules of Civil Procedure. Such a plan would provide all parties adequate time for oral depositions, interrogatories and other necessary stages of discovery. All discovery will be conducted pursuant to Rule 192 of the Texas Rules of Civil Procedure, which requires that all discovery be relevant to the subject matter of the pending action. As a complicated, multi-party products liability / negligence

---

[1] ETFs are funds that track a particular stock index and trade like a stock.

action is being alleged, extensive document review and expert testimony will be required. As such, additional time is necessary in order to fairly and adequately prepare for an efficient trial of the case. Furthermore, Plaintiff requests thirty (30) days from the filing of Defendants' Original Answer to prepare a written proposal for a discovery control plan.

### III.

### PARTIES

Plaintiff **RONALD GRESHAM** is and was at all time relevant hereto a resident of Dallas County, Texas.

Defendant **SEI INVESTMENTS MANAGEMENT CORP.** is a Delaware corporation that is registered to do and does business in the State of Texas. Defendant SEI Investments Management Corp. may be served with process by serving a copy of this Original Petition and Citation upon its registered agent in Texas:   CT Corp. System, 350 N. Saint Paul St., Dallas, Texas 75201-4240. Defendant SEI Investments Management Corp. is a wholly owned subsidiary of SEI Investments Co. Defendant purposefully availed itself of the privilege of conducting business in Texas, thus subjecting itself to the long-arm jurisdiction of Texas courts. Defendant purposefully availed itself of the privilege of conducting business in Texas by: among others, (1) marketing and advertising the EEV Fund and other ProShares ETFs for sale to persons in Texas; (2) distributing the EEV Fund and other ProShares ETFs to investors in Texas. Defendant SEI Investments Management Corp. is a wholly owned subsidiary of Defendant SEI Investments Co. According to its publicly available information, Defendant SEI is a leading global provider of asset management,

investment processing, and investment operations solutions and, upon information and believe, does a substantial amount of business in Texas.

Defendant **SEI Investments Company** is a foreign corporation organized and existing under the laws of the State of Pennsylvania, whose principal office is located at 1 Freedom Valley Dr., Oaks, Pennsylvania 19456. Defendant maintains a place of business in Dallas County, Texas. Defendant SEI Investments Distribution Co. may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Defendant engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas and does not maintain a regular place of business in Texas. TEX. CIV. PRAC. & REM. Code §17.044. This lawsuit arises out of, in part, the non-resident Defendant's business in Texas. Defendants ProShares Trust and ProShares Advisors, LLC hired SEI Investments Company to distribute shares of the EEV Fund to broker/dealers and, ultimately shareholders, such as Plaintiff. According to its publicly available information, Defendant SEI is a leading global provider of asset management, investment processing, and investment operations solutions and, upon information and believe, does a significant amount of business in Texas. Defendant purposefully availed itself of the privilege of conducting business in Texas, thus subjecting itself to the long-arm jurisdiction of Texas courts. Defendant purposefully availed itself of the privilege of conducting business in Texas by: among others, (1) marketing and advertising the EEV Fund and other ProShares ETFs for sale to persons in Texas; (2) distributing the EEV Fund and other ProShares ETFs to investors in Texas.

Defendant **SEI INVESTMENTS DISTRIBUTION CO.** is a foreign corporation organized and existing under the laws of the State of Pennsylvania, whose principal office is located at 1 Freedom Valley Drive, Oaks, Pennsylvania 19456. Defendant SEI Investments Distribution Co. may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Defendant engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas and does not maintain a regular place of business in Texas. TEX. CIV. PRAC. & REM. Code §17.044. This lawsuit arises out of, in part, the non-resident Defendant's business in Texas. Defendant SEI Investments Distribution Co. is the distributor and principal underwriter for the EEV Fund. Defendants ProShares Trust and ProShares Advisors, LLC hired SEI Investments Distribution Co. to distribute shares of the EEV Fund to broker/dealers and, ultimately shareholders, such as Plaintiff. Defendant SEI Investments Distribution Co. is a wholly owned subsidiary of SEI Investments Co. According to its publicly available information, Defendant SEI is a leading global provider of asset management, investment processing, and investment operations solutions and, upon information and believe, does a significant amount of business in Texas. Defendant purposefully availed itself of the privilege of conducting business in Texas, thus subjecting itself to the long-arm jurisdiction of Texas courts. Defendant purposefully availed itself of the privilege of conducting business in Texas by: among others, (1) marketing and advertising the EEV Fund and other ProShares ETFs for sale to persons in Texas; (2) distributing the EEV Fund and other ProShares ETFs to investors in Texas.

Defendant **PROSHARE ADVISORS, LLC** is a limited liability company organized and existing under the laws of the State of Maryland with its principal place of business located at 7501

Wisconsin Avenue, Suite 100, Bethesda, Maryland 20814. Defendant ProShare Advisor, LLC may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Defendant engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas and does not maintain a regular place of business in Texas. TEX. CIV. PRAC. & REM. Code §17.044. This lawsuit arises out of, in part, the non-resident Defendant's business in Texas. Defendant ProShare Advisor, LLC serves as the investment advisor to the funds comprising Defendant ProShares Trust, including the EEV Fund. ProShare Advisors, LLC oversees the investment and reinvestment of the assets in the EEV Fund. Defendant purposefully availed itself of the privilege of conducting business in Texas, thus subjecting itself to the long-arm jurisdiction of Texas courts. Defendant purposefully availed itself of the privilege of conducting business in Texas by: among others, (1) marketing and advertising the EEV Fund and other ProShares ETFs for sale to persons in Texas; (2) distributing the EEV Fund and other ProShares ETFs to investors in Texas.

Defendant **PROSHARES TRUST** is a Delaware trust with its principal place of business located at 7501 Wisconsin Avenue, Suite 100, Bethesda, Maryland 20814. Defendant ProShares Trust may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Defendant engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas and does not maintain a regular place of business in Texas. TEX. CIV. PRAC. & REM. Code §17.044. This lawsuit arises out of, in part, the non-resident Defendant's business in Texas. Defendant ProShares Trust has a portfolio of ETFs, the shares of which are all listed on the American Stock Exchange. Each

ProShares ETF has its own CUSIP number and exchange trading symbol. Each ProShares ETF issues and redeems shares on a continuous basis at net asset value in large, specified numbers of shares called "Creation Units." For each ETF, a Creation Unit is comprised of 75,000 shares. ProShares currently manages over $20 billion, accounting for 99 percent of the nation's short and leveraged ETFs. ProShares Trust maintains a website that is highly interactive that is used and viewed by thousands of persons in Texas. Upon information and belief, several hundred (if not thousands) of Texas residents have invested in ProShares' ETFs based on information ProShares made available and/or provided to Texas residents in Texas. Defendant purposefully availed itself of the privilege of conducting business in Texas, thus subjecting itself to the long-arm jurisdiction of Texas courts. Defendant purposefully availed itself of the privilege of conducting business in Texas by: among others, (1) marketing and advertising the EEV Fund and other ProShares ETFs for sale to persons in Texas; (2) distributing the EEV Fund and other ProShares ETFs to investors in Texas.

## IV.

### JURISDICTION AND VENUE

Venue is proper in Dallas County, Texas pursuant Texas Civil Practices & Remedies Code section 15.002 because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in Dallas County. Defendants placed their toxic and unreasonably dangerous EEV Fund into the stream of commerce in Dallas County, Texas and Plaintiff purchased the shares of the EEV Fund while in Dallas County, Texas, and the representations and misrepresentations contained in the Defendants' Registration Statement were provided to Plaintiff in Dallas County, Texas. Additionally, venue is proper in Dallas County, Texas under Texas Civil Practice & Remedies Code

section 15.002 because Plaintiff resided in Dallas County when the cause of action accrued, and no

other subdivision of Texas Civil Practice and Remedies Code section 15.002(a)(4) applies.

This Court has jurisdiction over this cause because the amount in controversy of $6,513.00 is

within the jurisdictional limits of the Court. This Court has personal jurisdiction over Defendants

because Defendants purposefully availed themselves of the privileges of conducting business in Texas

by conducting business in Texas with hundreds, if not thousands of, Texas residents and by

committing torts, which are the subject of this lawsuit, in whole or in part in Texas.

V.

## STATEMENT OF FACTS

### A.  TRADITIONAL & NONTRADITIONAL ETFS

ETFs are open-ended, with a unique creation and redemption feature that provides for the

creation of large blocks of ETF shares only by authorized participants which are usually institutional

investors, specialists or market makers, who signed a participant agreement with a particular ETF

sponsor or distributor to satisfy investor demand and provide market liquidity. ETFs are frequently

considered low cost index mutual funds that trade like stocks. ETFs, however, differ from traditional

mutual funds in the following ways:

(1) ETFs do not sell individual shares directly to investors and only issue shares in large blocks

(50,000 shares, for example) that are known as "Creation Units";

(2) Investors generally do not purchase Creating Units with cash. Rather, investors buy

Creation Units with a basket of securities that generally mirrors an ETF portfolio;

---

(3)   After purchasing a Creation Unit, an investor often splits it up and sells the individual
shares on a secondary market. This permits other investors to purchase individual shares of
the ETF (instead of Creating Units); and

(4)   Investors who want to sell their ETF shares have two options: (a) they can sell individual
shares to other investors on the secondary market, or (b) they can sell the Creating Units
back to the ETF. ETFs generally redeem Creation Units by giving investors the securities
that comprise the portfolio instead of cash.

In 1993, the American Stock Exchange launched the first traditional ETF, called the Spiders (or
SPDR), which tracked the S&P 500. Shortly thereafter, more ETFs were introduced to the market, for
example the Diamonds ETF in 1998, which tracked the Dow Jones Industrial Average, and the Cubes
in 1999, which tracked the NASDAQ 100.

Non-traditional, or leveraged ETFs, such as the EEV Fund, are a new form of ETFs that seek to
deliver multiples of the performance of the index or benchmark they track.

**B. PROSHARES' ETFS**

Defendant ProShares Trust consists of a portfolio of 90 ETFs, including the EEV Fund. After
being issued, shares in the ETFs are bought and sold on secondary exchanges, or aftermarkets, such as
the New York Stock Exchange or NASDAQ. Non-traditional, or so-called "leveraged" and/or
"inverse" ETFs, such as the EEV Fund, have attracted increasingly significant investor assets over the
last few years based on misrepresentations and/or omission of material facts by Defendants.

Defendant ProShares Trust manages approximately 99 percent of the country's short and
leveraged ETFs and, overall, it is the fifth largest provider of ETFs in the United States. Defendants

APP 013

represent that they design each ETF to correspond to the performance of a daily benchmark—such as the price performance, the inverse of the price performance, or a multiple of the inverse of the price performance—of an index or security.

ProShares Trust's ETFs are essentially divided into two categories: Ultra and UltraShort. Defendants market and sell their Ultra and UltraShort ETFs as "simple" directional play. As marketed by Defendants, Ultra ETFs are designed to go up when markets go up whereas UltraShort ETFs are designed to go up when markets go down. Defendants attracted investors with tempting and seemingly safe alternatives to stocks, namely ProShares Ultra and UltraShort ETFs, including the double-leveraged EEV Fund in which Plaintiff invested.

### C. THE EEV FUND

The EEV Fund is one of ProShares' many UltraShort ETFs that was registered by Defendants on or about October 30, 2007. Defendants touted and solicited investment in their exotic double leveraged EEV Fund which seeks to deliver twice the inverse of the daily performance of the MSCI Emerging Markets Index ("MSCI"). The MSCI is a float-adjusted capitalization-weighted index that targets for index inclusion 85 percent of free float adjusted market capitalization in each industry group, in global emerging market countries. The EEV Fund takes positions in securities and/or financial instruments that, in combination, should have similar return characteristics as—200 percent of the return of the index. The EEV Fund's principal investment strategies include:

1. Taking positions in financial instruments (including derivatives) that ProShare Advisors believes, in combination, should have similar daily price return characteristics that are inverse of the MSCI;

---

PLAINTIFF'S ORIGINAL PETITION, MOTION FOR LEVEL 3 DISCOVERY CONTROL PLAN,
AND REQUEST FOR DISCLOSURES                                                    PAGE 10

2.  Committing at least 85 percent of its assets to investments that, in combination, have economic characteristics that are inverse to those of the MSCI;

3.  Employing leveraged investment techniques in seeking its investment objective;

4.  Investing assets not invested in financial instruments in debt securities and/or money market instruments; and

5.  Concentrating investments in a particular industry or group of industries to approximately the same extent as the Index is so concentrated.

At the time Plaintiff invested in the EEV Fund, Defendants described the EEV Fund as a *simple* mathematical model using an objective formula to create a portfolio that will produce an inverse two-times return, compared to its benchmark index.   ProShares attributes its rapid growth to the "simplicity" its ETFs bring to implementing sophisticated investment strategies.   ProShares describes its strategy as "simple" to execute, but did not disclose that the strategy is only good for one day.

The EEV Fund in which Plaintiff invested is a defective and toxic investment product and does not perform in the manner in which it is represented and marketed.   The EEV Fund's market price return percentage for the year ending July 31, 2009 is *negative* 79.20 percent and is *negative* 54.75 percent since the fund's inception.

Defendants do not market the EEV Fund (or any of their ETFs) as day-trading vehicles. To the contrary, ProShares expressly touts that investors can use ProShares' ETFs **"for more than a day successfully."**   ProShares' Registration Statement goes so far as providing hypothetical examples of fees that an investor may encounter over a **1-year, 3-year, 5-year, and**

---

**10-year periods,** misleading investors, like Plaintiff, to believe that the EEV Fund could be used for intermediate or long-term investing.   Nothing could be further from the truth.

At the time Plaintiff invested in the EEV Fund, Defendants' Registration Statement did not explain that, notwithstanding the name of the EEV Fund, the investment objective of the EEV Fund, and the purpose of ProShares' UltraShort ETFs, the EEV Fund would—to a mathematical certainty—cause significant losses if used for intermediate or long-term investing or that these guaranteed losses are accelerated in volatile markets.  By design, the EEV Fund is a toxic and defective investment product.  The EEV Fund constitutes a defective product that is unreasonably dangerous.  The EEV Fund does not perform in the manner in which it was designed to perform or in the manner in which it was marketed.

The Registration Statement does not disclose, or fails to emphasize, that the EEV Fund must be sold within one day.  In other words, investors are not made aware that the only chance they have, within any mathematical formula, to profit is by selling the fund the same day they buy the fund. Defendants completely failed to disclose to investors, including Plaintiff, that holding the EEV Fund for more than a day will certainly lead to a loss.  Defendants are aware that individual investors, such as Plaintiff, do not view ETFs as day-trading investment vehicles.  In fact, it is virtually economically impossible for all investors in the EEV Fund to sell out of their positions at the end of one day. Defendants do not market the EEV Fund as a day-trading vehicle and there are no temporal limits placed on or recommended for investors in the EEV Fund.

The misleading nature of ProShares' statements and omissions are even more evident when compared to the statement of one of ProShares' primary competitors. In comparison to ProShares, Direxion stated on the cover of its December 29, 2008 prospectus, in bold type:

> **The Funds seek *daily leveraged* investment results. The Funds are intended to be used as short-term trading vehicles. The pursuit of *daily* leveraged investment goals means that the return of a Fund for a period longer than a single day will be the product of the series of daily leveraged returns for each day during the relevant period . . . . The Funds are not suitable for all investors. The Funds should only be used by sophisticated investors who (a) understand the risks associated with the use of leverage, (b) understand the consequences of seeking daily leveraged investment results and (c) who intend to actively monitor and manage their investments.**

Cover page of Direxion Prospectus (all emphasis in original).

Now, ProShares finally acknowledges on its website that "because of the daily objective of leveraged and inverse funds, investors should monitor their performance, as frequently as daily." However, ProShares' primary competitor, Direxion, notes on its website that its ETFs "should be used as short term trading vehicles" only.

By design, the EEV Fund actually exacerbates volatility, thus directly contributing to its own failure as an instrument for anything other than a day-trading vehicle. Defendants did not disclose this material fact to Plaintiff. Defendants did not disclose to Plaintiff that (a) volatility erodes returns and wealth accumulation, a fact not commonly understood; (b) the path that returns take over time has important effects on mid and long term total returns achieved; and (c) the return-volatility relationship matters even more so where leverage is employed. In sum, with a double leveraged ETF, like the EEV Fund, Plaintiff received at least twice the risk of the index

---

but less than twice the return. The drag imposed by return volatility makes such a result inevitable.

Plaintiff was misled by Defendants to invest long term in the EEV Fund. The EEV Fund is not a "simple" investment vehicle and cannot be used for mid or long-term investing. Clearly, double leveraged ETFs, like the EEV Fund, do not constitute a suitable or solid investment or hedging strategy for investors who intend to hold their positions for longer than a day. Defendants, however, failed to disclose these material facts to Plaintiff prior to him investing in the EEV Fund.

### D. RED FLAG WARNINGS

On June 11, 2009, the Financial Industry Regulatory Authority ("FINRA") issued Regulatory Notice 09-31 (the "FINRA Notice"). The FINRA Notice cautioned that "inverse and leveraged ETFs . . . typically are unsuitable for retail investors who plan to hold them for longer than one trading session, particularly in volatile markets." FINRA admonished those who deal in non-traditional ETFs that sales materials related to leveraged and inverse ETFs, like the EEV Fund, "must be fair and accurate." FINRA further cautioned:

**Suitability**

NASD Rule 2310 requires that, before recommending the purchase, sale or exchange of a security, a firm must have a reasonable basis for believing that the transaction is suitable for the customer to whom the recommendation is made. This analysis has two components. The first is determining whether the product is suitable for any customer, an analysis that requires firms and associated persons to fully understand the products and transactions they recommend.

**Communications with the Public**

NASE Rule 2210 prohibits firms and registered representatives from making false, exaggerated, unwarranted or misleading statements or claims tin communications with the public. Therefore, all sales materials and oral presentations used by firms regarding leveraged and inverse ETFs must present a fair and balanced picture of both the risks and benefits of the funds, and may not omit any material fact or qualification that would cause such a communication to be misleading . . . .

Thereafter, FINRA spokesman Herb Perone stated: "Exotic ETFs, such as inverse, leveraged and inverse-leveraged ETFs, are extremely **complicated and confusing products** . . . ."

On July 13, 2009, FINRA issued additional warnings via podcast on its website. In that warning, FINRA reiterated that most leveraged and inverse ETFs, like EEV, reset each day and are designed to achieve their stated objective on a daily basis—but with the effects of compounding over a longer timeframe, results differ significantly. In spite of this admonishment and clear results to the contrary, ProShares' Chairman, Michael L. Sapir, maintained that ProShares' leveraged and inverse ETFs can be used **"for more than a day successfully."**

On July 15, 2009, Massachusetts' Secretary of State William Galvin announced that Massachusetts had begun a probe into the sales practices of ProShares. Secretary Galvin stated: "[s]ince 2006 these products have become increasingly popular. Yet, due to the daily nature of the leverage employed, there is no guarantee of amplified annual returns and they generally incur greater transaction costs than traditional exchange traded funds." On July 21, 2009,

On August 18, 2009, the SEC issued an alert that began by stating:

The SEC staff and FINRA are issuing this Alert because we believe individual investors may be confused about the performance objectives of leveraged and inverse exchange-traded funds (ETFs). Leveraged and inverse ETFs typically are

---

designed to achieve their stated performance objectives on a daily basis. Some investors might invest in these ETFs with the expectation that the ETFs may meet their stated daily performance objectives over the long term as well. Investors should be aware that performance of these ETFs over a period longer than one day can differ significantly from their stated daily performance objectives.

The SEC alert provided "two real-life examples" to "illustrate how returns on a leveraged or inverse ETF over longer periods can differ significantly from the performance (or inverse of the performance) of their underlying index or benchmark during the same period of time." The SEC Alert further provided:

While there may be trading and hedging strategies that justify holding these investments longer than a day, buy-and-hold investors with an intermediate or long-term time horizon should carefully consider whether these ETFs are appropriate for their portfolio. As discussed above, because leveraged and inverse ETFs reset each day, their performance can quickly diverge from the performance of the underlying index or benchmark. In other words, it is possible that you could suffer significant losses even if the long-term performance of the index showed a gain.

On July 30, 2009, the *Wall Street Journal* reported that Charles Schwab ("Schwab") issued an unusual warning on July 28 to its clients who purchase non-traditional ETFs. Schwab warned its customers that "it is extremely important to understand that, for holding periods longer than a day, these funds may not give you the returns you may be expecting . . . . **Proceed with extreme caution."** ProShares' statements in the Registration Statement do not even come close to the "proceed with extreme caution" level of clarity now required of the brokerage houses. On August 1, 2009, the *Wall Street Journal* quoted Morningstar's director of ETF analysis, Scott Burns, who recently observed: "Hedges [like the EEV Fund] aren't supposed to become less trustworthy when you really need them."

Since FINRA's warnings, many financial companies, including Edward Jones & Co., UBS Financial, LPL Investment Holdings, Inc., Wells Fargo, Morgan Stanley Smith Barney, and Charles Schwab have either halted, or provided strongly worded warnings concerning, leveraged and/or inverse ETF trading. Edward Jones called ETFs like the EEV Fund "**one of the most misunderstood and potentially dangerous types of ETFs.**" UBS and many other brokerage firms have now stopped trading ETFs that use leverage or sell an underlying asset short or long. Similarly, Raymond James, Ameriprise Financial, and LPL Investment Holdings, Inc. have prohibited the sale of leveraged ETFs, like the EEV Fund, that seek twice the long or short performance of their target index.

## VI.

## CAUSES OF ACTION

### A. NEGLIGENT MISREPRESENTATION

Defendants made representations to Plaintiff in the course of their business and/or in transactions in which Defendants had an interest, namely in the Registration Statement for the EEV Fund. Defendants supplied Plaintiff and other investors with false information in the Registration Statement. Defendants failed to exercise reasonable care or competence in communicating the information and Plaintiff justifiably relied on Defendants' representations. The misrepresentations made by Defendants proximately caused Plaintiff's injury and damages.

Defendants failed to disclose and/or misrepresented to Plaintiff the following information, among others:

- The extent to which performance of the EEV Fund would inevitably diverge from the performance of the MSCI—i.e, the probability, if not certainty, of a significant tracking error;

- The extent to which performance of the EEV fund materially diverges from the performance of the MSCI on a daily basis in certain situations;

- Mathematical compounding prevents the EEV Fund from achieving its stated objective over a period of time greater than one day;[2]

- Once an index falls and the EEV Fund moves in the opposite direction, the index and the fund no longer share their original mathematical relationship;

- Wide divergence and/or inverse correlation between the EEV Fund and the MSCI over time would happen in the rarest of circumstances, and inadvertently if at all;

- The severe consequences of high market volatility of the EEV Fund's investment objective and performance;

- The consequences of the EEV Fund's daily hedge adjustment always going in the same direction as the movement of the underlying index, notwithstanding that it is an inverse leveraged ETF;

- The EEV Fund causes dislocations in the stock market;

- The severe consequences of inherent path dependency in periods of high market volatility of the EEV Fund's performance;

---

[2] Notably, ProShares' affiliate, ProShares Trust 115, disclosed this material fact in a Form 10-K filed with the SEC on March 31, 2009 ("The Funds do not seek to achieve their stated investment objective over a period of time greater than one day because mathematical compounding prevents the Funds from achieving such results.").

---

- The role the EEV Fund play in increasing market volatility, particularly in the last hour of the trading day; and

- The EEV Fund actually exacerbates volatility, thus directly contributing to its own failure.

Each of these acts or omissions, alone or in combination, was a proximate cause of damages to Plaintiff for which Plaintiff prays judgment.

## B. FRAUD BY NONDISCLOSURE

Despite a duty to disclose to Plaintiff, Defendants concealed and/or failed to disclose certain material facts about the EEV Fund to Plaintiff. Defendants knew either that Plaintiff was ignorant of such material facts and/or that Plaintiff did not have an equal opportunity to discover the material facts. Nevertheless, Defendants remained deliberately silent when they had a duty to speak. By failing to disclose the material facts, Defendants intended to induce Plaintiff to invest in the EEV Fund and remain invested in the EEV Fund. Plaintiff relied on Defendants' nondisclosure and was damaged as a result of acting without the knowledge of the undisclosed material facts.

Defendants failed to disclose and/or misrepresented to Plaintiff the following information, among others:

- The extent to which performance of the EEV Fund would inevitably diverge from the performance of the MSCI—i.e, the probability, if not certainty, of a significant tracking error;

---

- The extent to which performance of the EEV fund materially diverges from the performance of the MSCI on a daily basis in certain situations;

- Mathematical compounding prevents the EEV Fund from achieving its stated objective over a period of time greater than one day;[3]

- Once an index falls and the EEV Fund moves in the opposite direction, the index and the fund no longer share their original mathematical relationship;

- Wide divergence and/or inverse correlation between the EEV Fund and the MSCI over time would happen in the rarest of circumstances, and inadvertently if at all;

- The severe consequences of high market volatility of the EEV Fund's investment objective and performance;

- The consequences of the EEV Fund's daily hedge adjustment always going in the same direction as the movement of the underlying index, notwithstanding that it is an inverse leveraged ETF;

- The EEV Fund causes dislocations in the stock market;

- The severe consequences of inherent path dependency in periods of high market volatility of the EEV Fund's performance;

- The role the EEV Fund play in increasing market volatility, particularly in the last hour of the trading day; and

---

[3] Notably, ProShares' affiliate, ProShares Trust 115, disclosed this material fact in a Form 10-K filed with the SEC on March 31, 2009 ("The Funds do not seek to achieve their stated investment objective over a period of time greater than one day because mathematical compounding prevents the Funds from achieving such results.").

---

- The EEV Fund actually exacerbates volatility, thus directly contributing to its own failure.

Each of these acts or omissions, alone or in combination, was a proximate cause of damages to Plaintiff for which Plaintiff prays judgment.

## C. STRICT PRODUCTS LIABILITY

Defendants are strictly liable for designing an investment product that is unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. The product's "design defect" existed in the EEV Fund at the time it left Defendants' custody and was placed into the stream of commerce by Defendants. The EEV Fund's "design defect" was a producing cause of the occurrence in question and the resulting damages to Plaintiff. Defendants are strictly liable for placing a defectively designed investment product into the stream of commerce.

There was a safer alternative design. The safer alternative design would have prevented or significantly reduced the risk of the occurrence and damages in question without substantially impairing the product's utility. The safer alternative design was also economically and technologically feasible at the time the product left the control of Defendants by the application of existing or reasonably achievable knowledge. The "design defect" was a producing cause of the occurrence in question and the damages sustained by Plaintiff.

The defect that existed in the EEV Fund rendered the investment product toxic and unreasonably dangerous, in that the investment product became dangerous to an extent beyond

that which would be contemplated by the ordinary investor and user of the product, with the ordinary knowledge common to the community as to the investment product's characteristics.

Defendants are strictly liable for marketing and placing a dangerously defective product into the stream of commerce. Defendants failed to warn potential investors and users of the EEV Fund of the product's dangerously defective condition. The EEV Fund's "marketing defect" was a producing cause of the occurrence in question and the damages sustained by Plaintiff.

### D. JOINT ENTERPRISE LIABILITY

At all times relevant, Defendants were engaged in a joint enterprise as they had: (1) an agreement, either express or implied, with respect to the enterprise or endeavor; (2) a common purpose; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gave an equal right of control. As such, each entity is jointly and severally liable for the conduct of the other entities.

### VII.

### DAMAGES

Plaintiff seeks damages in the amount of $6,513.00, all of which were proximately caused by the acts and/or omissions of Defendants as alleged herein.

### VIII.

### REQUEST FOR DISCLOSURE AND PRIVILEGE LOG

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, you are hereby requested to disclose, within thirty (30) days of service of this request, the information or material described in

Rule 194.2 (a)-(k).   Also, pursuant to Rule 193.3 of the Texas Rules of Civil Procedure, you are hereby requested to produce, within fifteen (15) days of service of this request, a privilege log setting forth all documents you are withholding from any production based upon a claim of privilege.

## IX.

## DOCUMENTS TO BE USED

Pursuant to Rule 193.3(d) of the Texas Rules of Civil Procedure, Plaintiff intends to use all documents exchanged and produced between the parties including, but not limited to, correspondence and discovery responses, during the trial of the above-entitled and numbered cause.

## X.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that on final hearing, Plaintiff recover his damages in the amount of $6,513.00 from Defendants.

Respectfully submitted,

**R. DEAN GRESHAM**
State Bar No. 24027215
**FINEBERG / GRESHAM**
3811 Turtle Creek Blvd., Suite 1900
Dallas, Texas 75219
(214) 219-8828 (telephone)
(214) 219-8838 (facsimile)
dgresham@fineberglaw.com

**ATTORNEY *PRO SE***

11-19-09 92 3'48

FORM NO. 353-3 – CITATION

# THE STATE OF TEXAS

To:

SEI INVESTMENTS MANAGEMENT CORP.,
BY SERVING ITS REGISTERED AGENT, C. T. CORPORATION SYSTEM
350 N.STAINT PAUL STREET
DALLAS, TEXAS 75201-4240

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the **44th District Court** at 600 Commerce Street, Dallas, Texas 75202.
Said Plaintiff being **RONALD GRESHAM**

Filed in said Court **30th day of October, 2009** against

**SEI INVESTMENTS MANAGEMENT CORP., ET AL**

For suit, said suit being numbered **DC-09-14776-B**, the nature of which demand is as follows:
Suit On PROFESSIONAL LIABILITY etc. as shown on said petition        , a copy of which accompanies this
citation. If this citation is not served, it shall be returned unexecuted.
WITNESS: GARY FITZSIMMONS, Clerk of the District Courts of Dallas, County Texas.
Given under my name and the Seal of said Court at office on this **13th day of November, 2009**

_____, Deputy

ATTEST: GARY FITZSIMMONS
Clerk of the District Courts of Dallas, County Texas.

By _____

## CITATION

No.: **DC-09-14776-B**

**RONALD GRESHAM**
**vs.**
**SEI INVESTMENTS MANAGEMENT**
**CORP., et al**

ISSUED
**on this the 13th day of November,**
**2009**

GARY FITZSIMMONS
Clerk District Courts,
Dallas County, Texas

By **SPRINGE MCKINLEY, Deputy**

Attorney for Plaintiff
**R. DEAN GRESHAM**
**3811 TURTLE CREEK BLVD.**
**SUITE 1900**
**DALLAS, TEXAS 75219**
**214-219-8828**

ATTY

**EXHIBIT**
**3**

## OFFICER'S RETURN

Came to hand on the _____ day of _____, 20 _____, at _____, o'clock _____.M. Executed

at _____.M. on the _____ day of _____, 20 _____, by delivering to the within

named _____

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.

The distance actually traveled by me in serving such process was _____ miles and my fees are as follows:  To certify which witness my hand.

For serving Citation $ _____

For mileage $ _____ of _____ County, _____

For Notary $ _____ By _____ Deputy

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _____ before me this _____ day of _____, 20 _____

to certify which witness my hand and seal of office.

_____
Notary Public _____ County _____

# The State of Texas



Citations Unit
P.O. Box 12079
Austin, Texas 78711-2079

Phone: 512-463-5560
Fax: 512-463-0873
TTY (800) 735-2989
www.sos.state.tx.us

Secretary of State

November 24, 2009

SEI Investments Distribution Co
1 Freedom Valley Drive
Oaks , PA 19456

> **2010-175533-3**
> Include reference number in
> all correspondence

RE:  Ronald Gresham VS SEI Investments Management Corp et al
44th Judicial District Court Of Dallas County, Texas
Cause No: DC0914776B

Dear Sir/Madam,

Pursuant to the Laws of Texas, we forward herewith by CERTIFIED MAIL, return receipt requested, a copy of process received by the Secretary of State of the State of Texas on November 19, 2009.

CERTIFIED MAIL #71603901984812896918

Refer correspondence to:

R. Dean Gresham
Law Offices of Joel M. Fineberg, P.C.
3811 Turtle Creek Blvd., Suite 1900
Dallas, TX 75219

Sincerely,

Helen Lupercio

Helen Lupercio
Team Leader, Citations Unit
Statutory Documents Section

hl/vo
Enclosure

> **EXHIBIT**
> **4**

APP 030

CZH 11-18-09
clopm

ATTY SOS

FORM NO. 353-4—CITATION

# THE STATE OF TEXAS

To:  **SEI INVESTMENTS DISTRIBUTION CO.,**
**BY SERVING THE SECRETARY OF STATE**
**TEXAS SECRETARY OF STATE**
**1019 BRAZOS STREET**
**AUSTIN, TX., 78701**

RECEIVED

09 NOV 19 PM 12: 17

SECRETARY OF STATE
AUSTIN, TEXAS

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and           petition, a default judgment may be taken against you.

Your answer should be addressed to the clerk of the **44th District Court** at 600 Commerce Street, Dallas, Texas 75202.

Said **PLAINTIFF** being **RONALD GRESHAM**

Filed in said Court 30th day of October, 2009 against
**SEI INVESTMENTS MANAGEMENT CORP, ET AL**

For suit, said suit being numbered **DC-09-14776-B** the nature of which demand is as follows:
Suit On **PROFESSIONAL LIABILITY** etc.
as shown on said petition           , a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: GARY FITZSIMMONS, Clerk of the District Courts of Dallas, County Texas.
Given under my name and the Seal of said Court at office **on this the 13th day of November, 2009**
ATTEST: GARY FITZSIMMONS
Clerk of the District Courts of Dallas

By _____, Deputy

**SPRINGE MC KINLEY**

No.: DC-09-14776-B

# CITATION

**RONALD GRESHAM**
VS.
**SEI INVESTMENTS MANAGEMENT CORP., ET AL**

ISSUED
**ON THIS THE 13TH DAY OF NOVEMBER, 2009**

GARY FITZSIMMONS
Clerk District Courts,
Dallas County, Texas

By **SPRINGE MCKINLEY**, Deputy

Attorney for : Plaintiff
**R. DEAN GRESHAM**
**3811 TURTLE CREEK BLVD.,**
**SUITE 1900**
**DALLAS, TEXAS  75219**
**214-219-8828**

DELIVERED
ON 11 / 19 / 08
BY J. Keaton SCH 135

00175533 ~3

## OFFICER'S RETURN
## FOR INDIVIDUALS

Received this Citation the _____ day of _____, 20____, at _____ o'clock. Executed at _____, within the County

of _____, State of _____, on the _____ day of _____, 20____, at _____ o'clock, by

delivering to the within named _____ each in person, a copy of this Citation together with the accompanying

copy of Plaintiff's original petition, having first indorsed on same the date of delivery.

-------000000-------

## OFFICER'S RETURN
## FOR CORPORATIONS

Received this Citation the _____ day of _____, 20____, at _____ o'clock ____M. Executed at _____, within the County

of _____, State of _____, on the _____ day of _____, 20____, at

o'clock ____M. by summoning the within named Corporation, _____ by delivering to

said _____ President - Vice President - Registered Agent - in person, of the

a true copy of this citation together with the accompanying copy of Plaintiff's original petition, having first indorsed on same the date of delivery.

-------000000-------

The distance actually traveled by me in serving such process was _____ miles and my fees are as follows:  To certify which witness by my hand.

For Serving Citation  $ _____

For Mileage  $ _____                     Sheriff _____

For Notary  $ _____                       County of _____

Total Fees  $ _____                        State of _____

By _____

(Must be verified if served outside the State of Texas)

State of _____

County of _____

Signed and sworn to me by the said _____ before me this

day of _____, 20____, to certify which witness my hand and seal of office.

Seal

State & County of _____

APP 032