# The State of Texas



Citations Unit
P.O. Box 12079
Austin, Texas 78711-2079

Phone: 512-463-5560
Fax: 512-463-0873
TTY (800) 735-2989
www.sos.state.tx.us

## Secretary of State

November 24, 2009

SEI Investments Company
1 Freedom Valley Dr
Oaks, PA 19456

> **2010-175533-4**
> Include reference number in
> all correspondence

RE:  Ronald Gresham VS SEI Investments Management Corp et al
44th Judicial District Court Of Dallas County, Texas
Cause No: DC0914776B

Dear Sir/Madam,

Pursuant to the Laws of Texas, we forward herewith by CERTIFIED MAIL, return receipt
requested, a copy of process received by the Secretary of State of the State of Texas on
November 19, 2009.

CERTIFIED MAIL #7160390198481289 6901

Refer correspondence to:

R. Dean Gresham
Law Offices of Joel M. Fineberg, P.C.
3811 Turtle Creek Blvd., Suite 1900
Dallas, TX 75219

Sincerely,

Helen Lupercio

Helen Lupercio
Team Leader, Citations Unit
Statutory Documents Section

hl/vo
Enclosure

> ## EXHIBIT
> ## 5

CIT 11/17/01
6/10 am

ATTY SOS

FORM NO. 353-4—CITATION

# THE STATE OF TEXAS

# CITATION

No.: DC-09-14776-B

To:    **SEI INVESTMENTS COMPANY**
**BY SERVING THE SECRETARY OF STATE**
**TEXAS SECRETARY OF STATE**
**1019 BRAZOS STREET**
**AUSTIN, TX. 78701**

RECEIVED

09 NOV 19  PM 12: 17

SECRETARY OF STATE
AUSTIN, TEXAS

**RONALD GRESHAM**
VS.
**SEI INVESTMENTS MANAGEMENT
CORP, ET AL**

ISSUED
**ON THIS THE 13TH DAY OF
NOVEMBER, 2009**

GARY FITZSIMMONS
Clerk District Courts,
Dallas County, Texas

By **SPRINGE MCKINLEY**, Deputy

Attorney for : Plaintiff
**R. DEAN GRESHAM**
**3811 TURTLE CREEK BLVD.,**
**SUITE 1900**
**DALLAS, TEXAS  75219**
**214-219-8828**

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and        petition, a default judgment may be taken against you.
Your answer should be addressed to the clerk of the **44th District Court**
at 600 Commerce Street, Dallas, Texas 75202.

Said **PLAINTIFF** being **RONALD GRESHAM**

Filed in said Court 30th day of October, 2009 against
**SEI INVESTMENTS MANAGEMENT CORP, ET AL**

For suit, said suit being numbered  **DC-09-14776-B**  the nature of which demand is as follows:
Suit On  **PROFESSIONAL LIABILITY** etc.
as shown on said petition        , a copy of which accompanies this citation.  If this citation is not served, it
shall be returned unexecuted.

WITNESS: GARY FITZSIMMONS, Clerk of the District Courts of Dallas, County Texas.
Given under my name and the Seal of said Court at office **on this the 13th day of November, 2009**
ATTEST: GARY FITZSIMMONS,
Clerk of the District Courts of Dallas,

By _____ , Deputy
SPRINGE MCKINLEY

DELIVERED
ON 11/13/08
BY T. feter SCH735

00175533 –4

APP 034

**OFFICER'S RETURN
FOR INDIVIDUALS**

Received this Citation the _____ day of _____, 20____, at _____ o'clock. Executed at _____, within the County of _____, State of _____, on the _____ day of _____, 20____, at _____ o'clock, by delivering to the within named _____ each in person, a copy of this Citation together with the accompanying copy of Plaintiff's original petition, having first indorsed on same the date of delivery.

----------000000----------

**OFFICER'S RETURN
FOR CORPORATIONS**

Received this Citation the _____ day of _____, 20____, at _____ o'clock ____.M. Executed at _____, within the County of _____, State of _____, on the _____ day of _____, 20____, at _____ o'clock ____.M. by summoning the within named Corporation, _____ by delivering to _____ President - Vice President - Registered Agent - in person, of the said _____ a true copy of this citation together with the accompanying copy of Plaintiff's original petition, having first indorsed on same the date of delivery.

----------000000----------

The distance actually traveled by me in serving such process was _____ miles and my fees are as follows: To certify which witness by my hand.

For Serving Citation $ _____
For Mileage $ _____              Sheriff _____
For Notary $ _____               County of _____
Total Fees $ _____               State of _____
                                       By _____

(Must be verified if served outside the State of Texas)
State of _____
County of _____
Signed and sworn to me by the said _____ before me this _____ day of _____, 20____, to certify which witness my hand and seal of office.

Seal                                   State & County of _____

APP 035

# The State of Texas



Citations Unit
P.O. Box 12079
Austin, Texas 78711-2079

Phone: 512-463-5560
Fax: 512-463-0873
TTY (800) 735-2989
www.sos.state.tx.us

## Secretary of State

November 24, 2009

Proshare Advisors LLC
7501 Wisconsin Avenue
Suite 100
Bethesda, MD 20814

> **2010-175533-2**
> Include reference number in
> all correspondence

RE:  Ronald Gresham VS SEI Investments Management Corp et al
     44th Judicial District Court Of Dallas County, Texas
     Cause No: DC0914776B

Dear Sir/Madam,

Pursuant to the Laws of Texas, we forward herewith by CERTIFIED MAIL, return receipt
requested, a copy of process received by the Secretary of State of the State of Texas on
November 19, 2009.

CERTIFIED MAIL #71603901984812896925

Refer correspondence to:

R. Dean Gresham
Law Offices of Joel M. Fineberg, P.C.
3811 Turtle Creek Blvd., Suite 1900
Dallas, TX 75219

Sincerely,

*Helen Lupercio*

Helen Lupercio
Team Leader, Citations Unit
Statutory Documents Section

hl/vo
Enclosure

> **EXHIBIT**
> **6**

APP 036

CT4 11-19-09
@ 10-30 mm
ATTY SOS

No.: DC-09-14776-B

# CITATION

RONALD GRESHAM
VS.
SEI INVESTMENTS MANAGEMENT
CORP., ET AL

ISSUED
ON THIS THE 13TH DAY OF
NOVEMBER, 2009

GARY FITZSIMMONS
Clerk District Courts,
Dallas County, Texas

By **SPRINGE MCKINLEY**, Deputy

Attorney for : Plaintiff
**R. DEAN GRESHAM
3811 TURTLE CREEK BLVD.,
SUITE 1900
DALLAS, TEXAS 75219
214-219-8828**

DELIVERED
ON 11/13/09
BY S. Keeton SCH 1735

---

## FORM NO. 353-4—CITATION

# THE STATE OF TEXAS

To:   **PROSHARE ADVISORS, LLC.,
BY SERVING THE SECRETARY OF STATE
TEXAS SECRETARY OF STATE
1019 BRAZOS STREET
AUSTIN, TX, 78701**

RECEIVED
09 NOV 19 PH 12: 17
SECRETARY OF STATE
AUSTIN, TEXAS

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and      petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the **44th District Court** at 600 Commerce Street, Dallas, Texas 75202.

Said **PLAINTIFF** being **RONALD GRESHAM**

Filed in said Court 30th day of October, 2009 against
**SEI INVESTMENTS MANAGEMENT CORP., ET AL**

For suit, said suit being numbered **DC-09-14776-B** the nature of which demand is as follows:
Suit On **PROFESSIONAL LIABILITY** etc.
as shown on said petition      , a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: GARY FITZSIMMONS, Clerk of the District Courts of Dallas, County Texas.
Given under my name and the Seal of said Court at office on this the 13th day of November, 2009
ATTEST: GARY FITZSIMMONS, Clerk of the District Courts of Dallas, County Texas

By _____, Deputy
SPRINGE MCKINLEY

00175533 - 2

APP 037

# The State of Texas



Citations Unit
P.O. Box 12079
Austin, Texas 78711-2079

Phone: 512-463-5560
Fax: 512-463-0873
TTY (800) 735-2989
www.sos.state.tx.us

### Secretary of State

November 24, 2009

Proshares Trust
7501 Wisconsin Avenue
Suite 100
Bethesda, MD 20814

> **2010-175533-1**
> Include reference number in
> all correspondence

RE:   Ronald Gresham VS SEI Investments Management Corp et al
      44th Judicial District Court Of Dallas County, Texas
      Cause No: DC0914776B

Dear Sir/Madam,

Pursuant to the Laws of Texas, we forward herewith by CERTIFIED MAIL, return receipt requested, a copy of process received by the Secretary of State of the State of Texas on November 19, 2009.

CERTIFIED MAIL #71603901984812896932

Refer correspondence to:

R. Dean Gresham
Law Offices of Joel M. Fineberg, P.C.
3811 Turtle Creek Blvd., Suite 1900
Dallas, TX 75219

Sincerely,

Helen Lupercio
Team Leader, Citations Unit
Statutory Documents Section

hl/vo
Enclosure

> **EXHIBIT**
> **7**

APP 038

OTH 11-19-09
@10:24 �

ATTY SOS

# CITATION

No.: DC-09-14776-B

RONALD GRESHAM
VS.
SEI INVESTMENTS MANAGEMENT
CORP., ET AL

ISSUED
ON THIS THE 13TH DAY OF
NOVEMBER, 2009

GARY FITZSIMMONS
Clerk District Courts,
Dallas County, Texas

By SPRINGE MCKINLEY, Deputy

Attorney for : Plaintiff
R. DEAN GRESHAM
3811 TURTLE CREEK BLVD.,
SUITE 1900
DALLAS, TEXAS  75219
214-219-8828

DELIVERED
ON 11/19/09
BY J. Keyten SCH775

FORM NO. 353-4—CITATION

# THE STATE OF TEXAS

To:   PROSHARES TRUST
      BY SERVING THE SECRETARY OF STATE
      TEXAS SECRETARY OF STATE
      1019 BRAZOS STREET
      AUSTIN, TX, 78701

RECEIVED

09 NOV 19 PM 12: 17

SECRETARY OF STATE
AUSTIN, TEXAS

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and                petition, a default judgment may be taken against you.
Your answer should be addressed to the clerk of the **44th District Court**
at 600 Commerce Street, Dallas, Texas 75202.

Said **PLAINTIFF** being **RONALD GRESHAM**

Filed in said Court 30th day of October, 2009 against
**SEI INVESTMENTS MANAGEMENT CORP., ET AL**

For suit, said suit being numbered  **DC-09-14776-B**  the nature of which demand is as follows:
Suit On **PROFESSIONAL LIABILITY** etc.
as shown on said petition        , a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: GARY FITZSIMMONS, Clerk of the District Courts of Dallas, County Texas.
Given under my name and the Seal of said Court at office **on this the 13th day of November, 2009**
ATTEST: GARY FITZSIMMONS
Clerk of the District Courts of Dallas County, Texas

By _____, Deputy

SPRINGE MCKINLEY

00175533

APP 039

CAUSE NO. 09-14776   FILED

09 DEC 16 44H 10:08 IN THE 44TH JUDICIAL

RONALD GRESHAM, §
    Plaintiff, §
§
vs. §
§
SEI INVESTMENTS MANAGEMENT §
CORP., SEI INVESTMENTS CO., SEI §
INVESTMENTS DISTRIBUTION CO., §
PROSHARE ADVISORS, LLC, AND §
PROSHARES TRUST, §
    Defendants. §

GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO., TEXAS

_____ DEPUTY

DISTRICT COURT OF

DALLAS COUNTY, TEXAS

## CERTIFICATE OF CONFERENCE

☐    Counsel for Movants and Counsel for Respondent have personally conducted a conference at which there was a substantive discussion of every item presented to the Court in this Motion and despite best efforts, the counsel have not been able to resolve those matters presented.

☒    Counsel for Movants has caused to be delivered to counsel for Respondent and counsel for Respondent has received a copy of the proposed Motion. At least one attempt to contact counsel for Respondent on December 14 , 2009 followed the receipt by counsel for Respondent of the proposed Motion. Counsel for Respondent has failed to respond or attempt to resolve the matters presented.

☐    I, the undersigned attorney, hereby certify to the Court that I have conferred with opposing counsel in an effort to resolve the issues contained in this motion without the necessity of Court intervention, and opposing counsel has indicated that he does not opposed the Motion.

CERTIFIED to this 14th day of December , 20 09 .

_____

R. ROGGE DUNN
COUNSEL FOR DEFENDANTS/MOVANTS

**EXHIBIT**

**8**

## DEFENDANTS' SPECIAL EXCEPTIONS AND ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, SEI INVESTMENTS MANAGEMENT CORP., SEI INVESTMENTS CO., SEI INVESTMENTS DISTRIBUTION CO., PROSHARE ADVISORS, LLC, AND PROSHARES TRUST, Defendants in the above-styled and numbered cause (hereinafter collectively "Defendants" or "Movants") and file this response to the Original Petition filed by Ronald Gresham (hereinafter "Plaintiff" or "Respondent") and would show the Court as follows:

### SPECIAL EXCEPTIONS

Defendants specially except to the allegations contained in Paragraph I of Plaintiff's Original Petition, which state that:

"...[P]ursuant and traceable to their false and misleading Registration Statement, Prospectuses, and/or Statements of Additional Information (collectively, the "Registration Statement") issued in connection with the EEV Fund's shares. "

Defendants object to this pleading because it is vague and general and does not sufficiently identify the facts supporting Plaintiff's allegations. Further, it does not specify any false and misleading statements made by any of the Defendants.

On its face, the Petition does not describe with sufficient particularity the facts and circumstances supporting the allegations made in this portion of the Petition.

Therefore, the Petition should be amended to correct this defect. Defendants request that this Court set these Special Exceptions for hearing and upon hearing, the Court enter an Order requiring the Petition to be repled within a reasonable time in conformity with the Court's ruling.

Defendants specially except to the allegations contained in Paragraph VI A., Paragraph VI B. and Paragraph VI C. which plead causes of action for: "negligent misrepresentation," "fraud by nondisclosure," and "strict products liability."

Defendants object to these pleadings because these causes of action are barred by the bespeaks caution doctrine. Essentially, the registration statement and prospectus for the fund at issue fully disclosed the nature of the fund and its risks. Thus, no misrepresentation or fraud claim exists. Further, Defendants object to these pleadings because they are barred by the failure to allege loss causation. Any loss suffered by plaintiff was not caused by defendants' alleged misrepresentations. Given the structure and functioning of the ETF markets, the price of an ETF - like the price of a mutual fund - tracks the prices of the fund's underlying assets and thus would not rise and fall with the alleged misrepresentations/fraudulent statements.

Defendants specially except to the allegations contained in Paragraph VI C. of Plaintiff's Original Petition, which state that:

"Defendants are strictly liable for designing an investment product that is unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use."

Defendants object to this pleading because Texas law does not recognize a products liability cause of action for the sale of the type of fund about which Plaintiff complains in this lawsuit.

**DEFENDANTS' SPECIAL EXCEPTIONS AND ORIGINAL ANSWER** - Page 3
R:\8\8333\61010\SubPldgs\Answer (Draft).doc.002

On its face, the Petition does not describe with sufficient particularity the facts and circumstances supporting the allegations made in this portion of the Petition.

Therefore, the Petition should be amended to correct this defect. Defendants request that this Court set these Special Exceptions for hearing and upon hearing, the Court enter an Order requiring the Petition to be repled within a reasonable time in conformity with the Court's ruling.

Defendants specially except to the allegations contained in Paragraph VI D. of Plaintiff's Original Petition, which state that:

"At all times relevant, Defendants were engaged in a joint enterprise…."

Defendants object to this pleading because it is vague and general and does not sufficiently identify the facts supporting Plaintiff's allegations. Further, it does not specify how or when the joint enterprise occurred.

On its face, the Petition does not describe with sufficient particularity the facts and circumstances supporting the allegations made in this portion of the Petition.

Therefore, the Petition should be amended to correct this defect. Defendants request that this Court set these Special Exceptions for hearing and upon hearing, the Court enter an Order requiring the Petition to be repled within a reasonable time in conformity with the Court's ruling.

Defendants specially except to the allegations contained in Paragraphs I and VII of the Original Petition regarding damages.

Defendant objects to this pleading because it is vague and general and does not specify the maximum amount of damages sought in this lawsuit--as required by the Texas Rules of Civil Procedure.

Therefore, the Petition should be amended to correct this defect. Defendant requests that this Court set this Special Exception for hearing and upon hearing, the Court enter an Order sustaining this Special Exception and requiring the Petition to be repled within a reasonable time in conformity with the Court's ruling.

I.

## ORIGINAL ANSWER

Defendants deny each and every, all and singular, of the allegations in Plaintiff's Original Petition and demand strict proof thereof.

II.

## DEFENSES

## COMPARATIVE NEGLIGENCE

Alternatively, Defendants would show that the negligence on the part of the Plaintiff herein was greater than any negligence on the part of these Defendants, if any, and Defendants pray the Court to instruct the jury to assess the relative degrees of negligence herein, pursuant to Art. 32.001 through 33.016 of the Civil Practice and Remedies Code, V.A.T.S., as amended.

III.

## AFFIRMATIVE DEFENSES

In the alternative, Defendants plead the following affirmative defenses:

Defendants plead the affirmative defenses of laches, waiver and estoppel. Defendants would show that Plaintiff's claims are barred, in whole or part, by the doctrines of laches, estoppel and/or waiver.

**DEFENDANTS' SPECIAL EXCEPTIONS AND ORIGINAL ANSWER - Page 5**
R:\8\8333\61010\SubPldgs\Answer (Draft).doc.002

Defendants plead the affirmative defense of failure to mitigate. Defendants would show that Plaintiff is not entitled to recover damages, if any, because Plaintiff failed to mitigate Plaintiff's damages.

Defendants plead the affirmative defense of assumption of risk. Defendants would show that Plaintiff's claims are barred, in whole or part, by the assumption of risk.

Defendants plead the affirmative defense of license. Defendants would show that Plaintiff's claims are barred, in whole or part, by license.

Defendants plead the affirmative defense of res judicata. Defendants would show that Plaintiff's claims are barred, in whole or part, by res judicata.

Defendants plead the affirmative defense of any other matter constituting an avoidance or an affirmative defense. Defendants would show that Plaintiff's claims are barred, in whole or part, by avoidance, or another affirmative defense.

Defendants plead the affirmative defense of the parole evidence rule as barring Plaintiff's claim and any evidence of alleged representations made other than those contained in the contract(s) at issue in this lawsuit. Defendants would show that Plaintiff's claims are barred, in whole or part, by the statutes of contracts.


IV.

## RIGHT TO AMEND

Defendants reserve their right to further amend and/or supplement this Answer at a future date as is their right under the Rules of Civil Procedure.

V.

## REPORTER DEMAND

Defendants request the Official Court Reporter for this Court, perform all the duties of the office, as set forth in Section 52.046 of the Government Code of the State of Texas, and as set forth in Rule 13 of the Rules of Appellate Procedure, including reporting all testimony and trial proceedings.

VI.

## REQUEST FOR DISCLOSURE

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, you are requested to disclose, within thirty days of service of this Request, the information described in Rule 194.2 of the Texas Rules of Civil Procedure.

VII.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants pray that these Special Exceptions be set for hearing and that upon hearing, the Court enter an Order sustaining the Special Exceptions and order the Petition to be repled within a reasonable time in conformity with the Court's ruling and further prays that Plaintiff take nothing by way of this lawsuit and that Defendants recover their costs and receive such other and further relief, at law or in equity, to which Defendants may be justly entitled.

Respectfully submitted,

_____

R. ROGGE DUNN
State Bar No. 06249500

**CLOUSE DUNN KHOSHBIN LLP**
1201 Elm Street, Suite 5200
Dallas, Texas 75270
Telephone:  (214) 220-3888
Telecopier: (214) 220-3833

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument was served on all counsel of record, pursuant to the Rules, on the 14th day of December , 20 09.

**R. Dean Gresham - Pro Se**
Fineberg/Gresham
3811 Turtle Creek Blvd., Suite 1900
Dallas, Texas 75219

☐ **VIA HAND DELIVERY**
☒ **VIA FAX (214) 219-8838**
☐ **VIA EMAIL:** dgresham@fineberglaw.com
☐ **VIA FIRST CLASS MAIL**
☐ **VIA CERTIFIED MAIL, RRR**

_____

_____

R. ROGGE DUNN

**DEFENDANTS' SPECIAL EXCEPTIONS AND ORIGINAL ANSWER - Page 8**
R:\8\8333\61010\SubPldgs\Answer (Draft).doc.002

CAUSE NO. 09-14776

| | | |
|---|---|---|
| RONALD GRESHAM, | § | IN THE 44TH JUDICIAL |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| SEI INVESTMENTS MANAGEMENT | § | DISTRICT COURT OF |
| CORP., SEI INVESTMENTS CO., SEI | § | |
| INVESTMENTS DISTRIBUTION CO., | § | |
| PROSHARE ADVISORS, LLC, AND | § | |
| PROSHARES TRUST, | § | |
| Defendants. | § | DALLAS COUNTY, TEXAS |

## FIAT

The foregoing Special Exceptions have been set for hearing in the Courtroom on the _____

day of _____, 19_____ at _____ o'clock _____.m.


_____
PRESIDING JUDGE

CAUSE NO. 09-14776

| | | |
|---|---|---|
| RONALD GRESHAM | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| SEI INVESTMENTS MANAGEMENT | § | |
| CORP., SEI INVESTMENTS CO., SEI | § | |
| INVESTMENTS DISTRIBUTION CO., | § | |
| PROSHARE ADVISORS, LLC, AND | § | |
| PROSHARES TRUST | § | |
| | § | |
| Defendants. | § | 44TH JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENED PETITION, MOTION FOR LEVEL THREE DISCOVERY CONTROL PLAN, AND REQUEST FOR DISCLOSURES

TO THE HONORABLE COURT:

COMES NOW, RONALD GRESHAM hereinafter referred to as "Plaintiff" in the above-entitled and numbered cause, and files this his First Amended Petition, Motion for Level Three Discovery Control Plan, and Request for Disclosure, complaining of SEI Investments Management Corp., SEI Investments Co., SEI Investments Distribution Co., ProShare Advisors, LLC, and ProShares Trust (collectively referred to as "Defendants"), and in support thereof would respectfully show the Court as follows:

I.

## BACKGROUND

This is an action to recover money damages from Defendants after Plaintiff lost over six thousand dollars in the ProShares UltraShort MSCI Emerging Markets Fund (hereinafter the

EXHIBIT

9

"EEV Fund"). The EEV Fund is an exchange-traded fund ("ETF")[1] designed, marketed and placed into the stream of commerce by Defendants. Although not warned of by Defendants, the EEV Fund is an investment vehicle that can only be used for day trading—not for mid or long-term investing.

On November 21, 2008, Plaintiff purchased shares of the EEV Fund at a cost of $105 per share. Almost one year later and after watching the EEV Fund lose more than 80% of its value, Plaintiff sold 70 shares of the EEV Fund at a cost of $11.95 per share, yielding a loss of $6,513.00. As a proximate result of Defendants' acts and/or omissions alleged herein, Plaintiff was damaged in the amount of $6,513.00.

## II.

## MOTION FOR LEVEL THREE DISCOVERY PLAN

Plaintiff hereby moves to conduct discovery in accordance with a discovery control plan tailored to the circumstances of this specific suit.   In the interest of judicial economy and equity, Plaintiff moves to conduct discovery By Order (Level Three) pursuant to Rule 190.4 of the Texas Rules of Civil Procedure. Such a plan would provide all parties adequate time for oral depositions, interrogatories and other necessary stages of discovery. All discovery will be conducted pursuant to Rule 192 of the Texas Rules of Civil Procedure, which requires that all discovery be relevant to the subject matter of the pending action. As a complicated, multi-party products liability / negligence action is being alleged, extensive document review and expert testimony will be required.  As such, additional time is necessary in order to fairly and adequately prepare for an efficient trial of the

---

[1] ETFs are funds that track a particular stock index and trade like a stock.

APP 050

case. Furthermore, Plaintiff requests thirty (30) days from the filing of Defendants' Original Answer to prepare a written proposal for a discovery control plan.

## III.

## PARTIES

Plaintiff **RONALD GRESHAM** is and was at all time relevant hereto a resident of Dallas County, Texas.

Defendant **SEI INVESTMENTS MANAGEMENT CORP.** is a Delaware corporation that is registered to do and does business in the State of Texas. Defendant SEI Investments Management Corp. has answered and is before the Court for all purposes. Defendant SEI Investments Management Corp. is a wholly owned subsidiary of SEI Investments Co. Defendant purposefully availed itself of the privilege of conducting business in Texas, thus subjecting itself to the long-arm jurisdiction of Texas courts. Defendant purposefully availed itself of the privilege of conducting business in Texas by: among others, (1) marketing and advertising the EEV Fund and other ProShares ETFs for sale to persons in Texas; (2) distributing the EEV Fund and other ProShares ETFs to investors in Texas. Defendant SEI Investments Management Corp. is a wholly owned subsidiary of Defendant SEI Investments Co. According to its publicly available information, Defendant SEI is a leading global provider of asset management, investment processing, and investment operations solutions and, upon information and believe, does a substantial amount of business in Texas.

Defendant **SEI Investments Company** is a foreign corporation organized and existing under the laws of the State of Pennsylvania, whose principal office is located at 1 Freedom Valley

Dr., Oaks, Pennsylvania 19456. Defendant maintains a place of business in Dallas County, Texas. Defendant SEI Investments Distribution Co. has answered and is before the Court for all purposes. This lawsuit arises out of, in part, the non-resident Defendant's business in Texas. Defendants ProShares Trust and ProShares Advisors, LLC hired SEI Investments Company to distribute shares of the EEV Fund to broker/dealers and, ultimately shareholders, such as Plaintiff. According to its publicly available information, Defendant SEI is a leading global provider of asset management, investment processing, and investment operations solutions and, upon information and believe, does a significant amount of business in Texas. Defendant purposefully availed itself of the privilege of conducting business in Texas, thus subjecting itself to the long-arm jurisdiction of Texas courts. Defendant purposefully availed itself of the privilege of conducting business in Texas by: among others, (1) marketing and advertising the EEV Fund and other ProShares ETFs for sale to persons in Texas; (2) distributing the EEV Fund and other ProShares ETFs to investors in Texas.

Defendant **SEI INVESTMENTS DISTRIBUTION CO.** is a foreign corporation organized and existing under the laws of the State of Pennsylvania, whose principal office is located at 1 Freedom Valley Drive, Oaks, Pennsylvania 19456. Defendant SEI Investments Distribution Co. has answered and is before the Court for all purposes. This lawsuit arises out of, in part, the non-resident Defendant's business in Texas. Defendant SEI Investments Distribution Co. is the distributor and principal underwriter for the EEV Fund. Defendants ProShares Trust and ProShares Advisors, LLC hired SEI Investments Distribution Co. to distribute shares of the EEV Fund to broker/dealers and, ultimately shareholders, such as Plaintiff. Defendant SEI Investments Distribution Co. is a wholly owned subsidiary of SEI Investments Co. According to its publicly

available information, Defendant SEI is a leading global provider of asset management, investment processing, and investment operations solutions and, upon information and believe, does a significant amount of business in Texas. Defendant purposefully availed itself of the privilege of conducting business in Texas, thus subjecting itself to the long-arm jurisdiction of Texas courts. Defendant purposefully availed itself of the privilege of conducting business in Texas by: among others, (1) marketing and advertising the EEV Fund and other ProShares ETFs for sale to persons in Texas; (2) distributing the EEV Fund and other ProShares ETFs to investors in Texas.

Defendant **PROSHARE ADVISORS, LLC** is a limited liability company organized and existing under the laws of the State of Maryland with its principal place of business located at 7501 Wisconsin Avenue, Suite 100, Bethesda, Maryland 20814. Defendant ProShare Advisor, LLC has answered and is before the Court for all purposes. This lawsuit arises out of, in part, the non-resident Defendant's business in Texas. Defendant ProShare Advisor, LLC serves as the investment advisor to the funds comprising Defendant ProShares Trust, including the EEV Fund. ProShare Advisors, LLC oversees the investment and reinvestment of the assets in the EEV Fund. Defendant purposefully availed itself of the privilege of conducting business in Texas, thus subjecting itself to the long-arm jurisdiction of Texas courts. Defendant purposefully availed itself of the privilege of conducting business in Texas by: among others, (1) marketing and advertising the EEV Fund and other ProShares ETFs for sale to persons in Texas; (2) distributing the EEV Fund and other ProShares ETFs to investors in Texas.

Defendant **PROSHARES TRUST** is a Delaware trust with its principal place of business located at 7501 Wisconsin Avenue, Suite 100, Bethesda, Maryland 20814. Defendant ProShares

Trust has answered and is before the Court for all purposes. This lawsuit arises out of, in part, the non-resident Defendant's business in Texas. Defendant ProShares Trust has a portfolio of ETFs, the shares of which are all listed on the American Stock Exchange. Each ProShares ETF has its own CUSIP number and exchange trading symbol. Each ProShares ETF issues and redeems shares on a continuous basis at net asset value in large, specified numbers of shares called "Creation Units." For each ETF, a Creation Unit is comprised of 75,000 shares. ProShares currently manages over $20 billion, accounting for 99 percent of the nation's short and leveraged ETFs. ProShares Trust maintains a website that is highly interactive that is used and viewed by thousands of persons in Texas. Upon information and belief, several hundred (if not thousands) of Texas residents have invested in ProShares' ETFs based on information ProShares made available and/or provided to Texas residents in Texas. Defendant purposefully availed itself of the privilege of conducting business in Texas, thus subjecting itself to the long-arm jurisdiction of Texas courts. Defendant purposefully availed itself of the privilege of conducting business in Texas by: among others, (1) marketing and advertising the EEV Fund and other ProShares ETFs for sale to persons in Texas; (2) distributing the EEV Fund and other ProShares ETFs to investors in Texas.

### IV.

### JURISDICTION AND VENUE

Venue is proper in Dallas County, Texas pursuant Texas Civil Practices & Remedies Code section 15.002 because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in Dallas County. Defendants placed their toxic and unreasonably dangerous EEV Fund into the stream of commerce in Dallas County, Texas and Plaintiff purchased the shares of the EEV

---

Fund while in Dallas County, Texas, and the representations and misrepresentations contained in the Defendants' marketing materials were provided to Plaintiff in Dallas County, Texas. Additionally, venue is proper in Dallas County, Texas under Texas Civil Practice & Remedies Code section 15.002 because Plaintiff resided in Dallas County when the cause of action accrued, and no other subdivision of Texas Civil Practice and Remedies Code section 15.002(a)(4) applies.

This Court has jurisdiction over this cause because the amount in controversy of $6,513.00 is within the jurisdictional limits of the Court. This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of the privileges of conducting business in Texas by conducting business in Texas with hundreds, if not thousands of, Texas residents and by committing torts, which are the subject of this lawsuit, in whole or in part in Texas.

### V.

## STATEMENT OF FACTS

### A. PROSHARES' ETFs

Defendant ProShares Trust consists of a portfolio of 90 ETFs, including the EEV Fund. Non-traditional, or so-called "leveraged" and/or "inverse" ETFs, such as the EEV Fund, have attracted increasingly significant investor assets over the last few years based on misrepresentations and/or omission of material facts by Defendants.

Defendant ProShares Trust manages approximately 99 percent of the nation's short and leveraged ETFs and, overall, it is the fifth largest provider of ETFs in the United States. Defendants represent that they design each ETF to correspond to the performance of a daily benchmark—such as

the price performance, the inverse of the price performance, or a multiple of the inverse of the price performance—of an index or security.

ProShares Trust's ETFs are essentially divided into two categories: Ultra and UltraShort. Defendants market and sell their Ultra and UltraShort ETFs as "simple" directional play that are appropriate for long-term investing. As marketed by Defendants, Ultra ETFs are designed to go up when markets go up whereas UltraShort ETFs are designed to go up when markets go down.

## B. THE EEV FUND

The EEV Fund is one of ProShares' many UltraShort ETFs that entered the stream of commerce on or about October 30, 2007. The EEV Fund, according to Defendants, seeks to deliver twice the inverse of the daily performance of the MSCI Emerging Markets Index ("MSCI"). The MSCI is a float-adjusted capitalization-weighted index that targets for index inclusion 85 percent of free float adjusted market capitalization in each industry group, in global emerging market countries. The EEV Fund takes positions in securities and/or financial instruments that, in combination, should have similar return characteristics as 200 percent of the return of the index. The EEV Fund's principal investment strategies include:

1. Taking positions in financial instruments (including derivatives) that ProShare Advisors believes, in combination, should have similar daily price return characteristics that are inverse of the MSCI;

2. Committing at least 85 percent of its assets to investments that, in combination, have economic characteristics that are inverse to those of the MSCI;

3. Employing leveraged investment techniques in seeking its investment objective;

4.  Investing assets not invested in financial instruments in debt securities and/or money market instruments; and

5.  Concentrating investments in a particular industry or group of industries to approximately the same extent as the Index is so concentrated.

At the time Plaintiff invested in the EEV Fund, Defendants described the EEV Fund as a *simple* mathematical model using an objective formula to create a portfolio that will produce an inverse two-times return, compared to its benchmark index (the MSCI). ProShares attributes its rapid growth to the "simplicity" its ETFs bring to implementing sophisticated investment strategies. While ProShares describes its strategy as "simple" to execute, it failed to disclose that the strategy is only good for one day.

The EEV Fund in which Plaintiff invested is a defective and toxic investment product and does not perform in the manner in which it is represented and marketed. The EEV Fund's market price return percentage for the year ending July 31, 2009 is *negative* 79.20 percent and is *negative* 54.75 percent since the fund's inception.

Defendants do not market the EEV Fund (or any of their ETFs) as day-trading vehicles. To the contrary, ProShares expressly touts that investors can use ProShares' ETFs **"for more than a day successfully."** ProShares' marketing materials even provide hypothetical examples of fees that a customer may encounter over a **1-year, 3-year, 5-year, and 10-year periods,** misleading potential customers to believe that the EEV Fund can be used for long-term investing. Nothing could be further from the truth.

At the time Plaintiff purchased the EEV Fund, Defendants failed to disclose that the EEV Fund would—to a mathematical certainty—cause significant losses if used for intermediate or long-term investing or that the losses are accelerated in volatile markets. By design, the EEV Fund is a toxic and defective product that is unreasonably dangerous to consumers. The EEV Fund does not perform in the manner in which it was designed to perform or in the manner in which it was marketed.

Defendants' marketing materials do not disclose and/or fail to emphasize that the EEV Fund must be sold within one day in order to achieve its stated objective. In other words, consumers are not made aware that the only chance they have, within any mathematical formula, to profit is by selling the fund the same day they buy the fund. Defendants completely failed to disclose to consumers, including Plaintiff, that holding the EEV Fund for more than a day will certainly lead to a loss. Defendants are aware that individual investors, such as Plaintiff, do not view ETFs as day-trading investment vehicles. In fact, it is virtually economically impossible for all purchasers of the EEV Fund to sell out of their positions at the end of one day. Defendants do not market the EEV Fund as a day-trading vehicle and there are no temporal limits placed on or recommended for purchasers of the EEV Fund.

The misleading nature of ProShares' statements and omissions are even more evident when compared to the statement of one of ProShares' primary competitors—Direxion. Unlike ProShares, Direxion stated on the cover of its December 29, 2008 prospectus, in bold type:

> **The Funds seek _daily leveraged_ investment results. The Funds are intended to be used as short-term trading vehicles. The pursuit of _daily_ leveraged investment goals means that the return of a Fund for a period longer than a single day will be the product of the series of daily leveraged returns for each day during the relevant period . . . . The Funds are not suitable for all investors. The Funds should only be used by sophisticated investors who (a)**

> **understand the risks associated with the use of leverage, (b) understand the consequences of seeking daily leveraged investment results and (c) who intend to actively monitor and manage their investments.**

Cover page of Direxion Prospectus (all emphasis in original).

Today, ProShares finally acknowledges on its website that "because of the daily objective of leveraged and inverse funds, investors should monitor their performance, as frequently as daily." Unlike ProShares, Direxion notes on its website that its ETFs "should be used as short term trading vehicles" only.

By design, the EEV Fund actually exacerbates volatility, thus directly contributing to its own failure as an instrument for anything other than a day-trading vehicle. Defendants did not disclose this material fact to Plaintiff. Defendants did not disclose to Plaintiff that (a) volatility erodes returns and wealth accumulation, a fact not commonly understood; (b) the path that returns take over time has important effects on mid and long term total returns achieved; and (c) the return-volatility relationship matters even more so where leverage is employed. In sum, with a double leveraged ETF, like the EEV Fund, Plaintiff received at least twice the risk of the index but less than twice the return. The drag imposed by return volatility makes such a result inevitable.

Plaintiff was misled by Defendants to invest long term in the EEV Fund. The EEV Fund is not a "simple" investment vehicle and cannot be used for mid or long-term investing. Defendants, however, failed to disclose this material fact to Plaintiff prior to his purchase of the EEV Fund.

## C. RED FLAG WARNINGS

---

APP 059

On June 11, 2009, the Financial Industry Regulatory Authority ("FINRA") issued

Regulatory Notice 09-31 (the "FINRA Notice"). The FINRA Notice cautioned that "inverse and

leveraged ETFs . . . typically are unsuitable for retail investors who plan to hold them for longer

than one trading session, particularly in volatile markets." FINRA admonished those who deal in

non-traditional ETFs that sales materials related to leveraged and inverse ETFs, like the EEV

Fund, "must be fair and accurate." FINRA further cautioned:

**Suitability**

NASD Rule 2310 requires that, before recommending the purchase, sale or
exchange of a security, a firm must have a reasonable basis for believing that the
transaction is suitable for the customer to whom the recommendation is made.
This analysis has two components. The first is determining whether the product is
suitable for any customer, an analysis that requires firms and associated persons
to fully understand the products and transactions they recommend.

**Communications with the Public**

NASE Rule 2210 prohibits firms and registered representatives from making
false, exaggerated, unwarranted or misleading statements or claims tin
communications with the public. Therefore, all sales materials and oral
presentations used by firms regarding leveraged and inverse ETFs must present a
fair and balanced picture of both the risks and benefits of the funds, and may not
omit any material fact or qualification that would cause such a communication to
be misleading . . . .

Thereafter, FINRA spokesman Herb Perone stated: "Exotic ETFs, such as inverse, leveraged and

inverse-leveraged ETFs, are extremely **complicated and confusing products** . . . ."

On July 13, 2009, FINRA issued additional warnings via podcast on its website. In that

warning, FINRA reiterated that most leveraged and inverse ETFs, like EEV, reset each day and

are designed to achieve their stated objective on a daily basis—but with the effects of compounding over a longer timeframe, results differ signifcantly. In spite of this admonishment and clear results to the contrary, ProShares' Chairman, Michael L. Sapir, maintained that ProShares' leveraged and inverse ETFs can be used "**for more than a day successfully**."

On July 15, 2009, Massachusetts' Secretary of State William Galvin announced that Massachusetts had begun a probe into the sales practices of ProShares. Secretary Galvin stated: "[s]ince 2006 these products have become increasingly popular. Yet, due to the daily nature of the leverage employed, there is no guarantee of amplified annual returns and they generally incur greater transaction costs than traditional exchange traded funds."

On August 18, 2009, the SEC issued an alert that began by stating:

> The SEC staff and FINRA are issuing this Alert because we believe individual investors may be confused about the performance objectives of leveraged and inverse exchange-traded funds (ETFs). Leveraged and inverse ETFs typically are designed to achieve their stated performance objectives on a daily basis. Some investors might invest in these ETFs with the expectation that the ETFs may meet their stated daily performance objectives over the long term as well. Investors should be aware that performance of these ETFs over a period longer than one day can differ significantly from their stated daily performance objectives.

The SEC alert provided "two real-life examples" to "illustrate how returns on a leveraged or inverse ETF over longer periods can differ significantly from the performance (or inverse of the performance) of their underlying index or benchmark during the same period of time." The SEC Alert further provided:

> While there may be trading and hedging strategies that justify holding these investments longer than a day, buy-and-hold investors with an intermediate or long-term time horizon should carefully consider whether these ETFs are appropriate for their portfolio. As discussed above, because leveraged and inverse ETFs reset each day, their performance can quickly diverge from the performance

PLAINTIFF'S FIRST AMENDED PETITION, MOTION FOR LEVEL 3 DISCOVERY CONTROL PLAN, AND REQUEST FOR DISCLOSURES
PAGE 13

of the underlying index or benchmark. In other words, it is possible that you could suffer significant losses even if the long-term performance of the index showed a gain.

On July 30, 2009, the *Wall Street Journal* reported that Charles Schwab ("Schwab") issued an unusual warning on July 28 to its clients who purchase non-traditional ETFs. Schwab warned its customers that "it is extremely important to understand that, for holding periods longer than a day, these funds may not give you the returns you may be expecting . . . . **Proceed with extreme caution.**" ProShares' statements in the Registration Statement do not even come close to the "proceed with extreme caution" level of clarity now required of the brokerage houses. On August 1, 2009, the *Wall Street Journal* quoted Morningstar's director of ETF analysis, Scott Burns, who recently observed: "Hedges [like the EEV Fund] aren't supposed to become less trustworthy when you really need them."

Since FINRA's warnings, many financial companies, including Edward Jones & Co., UBS Financial, LPL Investment Holdings, Inc., Wells Fargo, Morgan Stanley Smith Barney, and Charles Schwab have either halted, or provided strongly worded warnings concerning, leveraged and/or inverse ETF trading. Edward Jones called ETFs like the EEV Fund **"one of the most misunderstood and potentially dangerous types of ETFs."** UBS and many other brokerage firms have now stopped trading ETFs that use leverage or sell an underlying asset short or long. Similarly, Raymond James, Ameriprise Financial, and LPL Investment Holdings, Inc. have prohibited the sale of leveraged ETFs, like the EEV Fund, that seek twice the long or short performance of their target index.

# VI.

## CAUSES OF ACTION

### A. NEGLIGENT MISREPRESENTATION

Defendants made representations to Plaintiff in the course of their business and/or in transactions in which Defendants had an interest. Defendants supplied Plaintiff and other investors with false information. Defendants failed to exercise reasonable care or competence in communicating the information and Plaintiff justifiably relied on Defendants' representations. The misrepresentations made by Defendants proximately caused Plaintiff's injury and damages.

Defendants failed to disclose and/or misrepresented to Plaintiff the following information, among others:

- The extent to which performance of the EEV Fund would inevitably diverge from the performance of the MSCI—i.e, the probability, if not certainty, of a significant tracking error;

- The extent to which performance of the EEV fund materially diverges from the performance of the MSCI on a daily basis in certain situations;

- Mathematical compounding prevents the EEV Fund from achieving its stated objective over a period of time greater than one day;[2]

- Once an index falls and the EEV Fund moves in the opposite direction, the index and the fund no longer share their original mathematical relationship;

---

[2] Notably, ProShares' affiliate, ProShares Trust 115, disclosed this material fact in a Form 10-K filed with the SEC on March 31, 2009 ("The Funds do not seek to achieve their stated investment objective over a period of time greater than one day because mathematical compounding prevents the Funds from achieving such results.").

---

- Wide divergence and/or inverse correlation between the EEV Fund and the MSCI over time would happen in the rarest of circumstances, and inadvertently if at all;

- The severe consequences of high market volatility of the EEV Fund's investment objective and performance;

- The consequences of the EEV Fund's daily hedge adjustment always going in the same direction as the movement of the underlying index, notwithstanding that it is an inverse leveraged ETF;

- The EEV Fund causes dislocations in the stock market;

- The severe consequences of inherent path dependency in periods of high market volatility of the EEV Fund's performance;

- The role the EEV Fund play in increasing market volatility, particularly in the last hour of the trading day; and

- The EEV Fund actually exacerbates volatility, thus directly contributing to its own failure.

Each of these acts or omissions, alone or in combination, was a proximate cause of damages to Plaintiff for which Plaintiff prays judgment.

**B.   FRAUD BY NONDISCLOSURE**

Despite a duty to disclose to Plaintiff, Defendants concealed and/or failed to disclose certain material facts about the EEV Fund to Plaintiff. Defendants knew either that Plaintiff was ignorant of such material facts and/or that Plaintiff did not have an equal opportunity to discover the material facts. Nevertheless, Defendants remained deliberately silent when they had a duty

to speak. By failing to disclose the material facts, Defendants intended to induce Plaintiff to invest in the EEV Fund and remain invested in the EEV Fund. Plaintiff relied on Defendants' nondisclosure and was damaged as a result of acting without the knowledge of the undisclosed material facts.

Defendants failed to disclose and/or misrepresented to Plaintiff the following information, among others:

- The extent to which performance of the EEV Fund would inevitably diverge from the performance of the MSCI—i.e, the probability, if not certainty, of a significant tracking error;

- The extent to which performance of the EEV fund materially diverges from the performance of the MSCI on a daily basis in certain situations;

- Mathematical compounding prevents the EEV Fund from achieving its stated objective over a period of time greater than one day;

- Once an index falls and the EEV Fund moves in the opposite direction, the index and the fund no longer share their original mathematical relationship;

- Wide divergence and/or inverse correlation between the EEV Fund and the MSCI over time would happen in the rarest of circumstances, and inadvertently if at all;

- The severe consequences of high market volatility of the EEV Fund's investment objective and performance;

- The consequences of the EEV Fund's daily hedge adjustment always going in the same direction as the movement of the underlying index, notwithstanding that it is an inverse leveraged ETF;

- The EEV Fund causes dislocations in the stock market;

- The severe consequences of inherent path dependency in periods of high market volatility of the EEV Fund's performance;

- The role the EEV Fund play in increasing market volatility, particularly in the last hour of the trading day; and

- The EEV Fund actually exacerbates volatility, thus directly contributing to its own failure.

Each of these acts or omissions, alone or in combination, was a proximate cause of damages to Plaintiff for which Plaintiff prays judgment.

## C.   STRICT PRODUCTS LIABILITY

Defendants are strictly liable for designing an investment product that is unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. The product's "design defect" existed in the EEV Fund at the time it left Defendants' custody and was placed into the stream of commerce by Defendants. The EEV Fund's "design defect" was a producing cause of the occurrence in question and the resulting damages to Plaintiff. Defendants are strictly liable for placing a defectively designed investment product into the stream of commerce.

There was a safer alternative design. The safer alternative design would have prevented or significantly reduced the risk of the occurrence and damages in question without substantially impairing the product's utility.    The safer alternative design was also economically and technologically feasible at the time the product left the control of Defendants by the application of existing or reasonably achievable knowledge. The "design defect" was a producing cause of the occurrence in question and the damages sustained by Plaintiff.

The defect that existed in the EEV Fund rendered the investment product toxic and unreasonably dangerous, in that the investment product became dangerous to an extent beyond that which would be contemplated by the ordinary investor and user of the product, with the ordinary knowledge common to the community as to the investment product's characteristics.

Defendants are strictly liable for marketing and placing a dangerously defective product into the stream of commerce. Defendants failed to warn potential investors and users of the EEV Fund of the product's dangerously defective condition.   The EEV Fund's "marketing defect" was a producing cause of the occurrence in question and the damages sustained by Plaintiff.

### D.    JOINT ENTERPRISE LIABILITY

At all times relevant, Defendants were engaged in a joint enterprise as they had: an agreement, either express or implied, with the common purpose of marketing and distributing the EEV Fund and placing it into the stream of commerce.   Defendants had a community of pecuniary interest in that common purpose and an each Defendant had an equal right of control over the enterprise. As such, each Defendant is jointly and severally liable for the conduct of the other entities.

## VII.

## DAMAGES

Plaintiff seeks damages in the amount of $6,513.00, all of which were proximately caused by the acts and/or omissions of Defendants as alleged herein.

## VIII.

## REQUEST FOR ISCLOSURE AND PRIVILEGE LOG

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, you are hereby requested to disclose, within thirty (30) days of service of this request, the information or material described in Rule 194.2 (a)-(k). Also, pursuant to Rule 193.3 of the Texas Rules of Civil Procedure, you are hereby requested to produce, within fifteen (15) days of service of this request, a privilege log setting forth all documents you are withholding from any production based upon a claim of privilege.

## IX.

## DOCUMENTS TO BE USED

Pursuant to Rule 193.3(d) of the Texas Rules of Civil Procedure, Plaintiff intends to use all documents exchanged and produced between the parties including, but not limited to, correspondence and discovery responses, during the trial of the above-entitled and numbered cause.

## X.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that on final hearing, Plaintiff recover his damages in the amount of $6,513.00 from Defendants.

---

PLAINTIFF'S FIRST AMENDED PETITION, MOTION FOR LEVEL 3 DISCOVERY CONTROL PLAN,
AND REQUEST FOR DISCLOSURES

APP 068

Respectfully submitted,

**R. DEAN GRESHAM**
State Bar No. 24027215
**FINEBERG / GRESHAM**
3811 Turtle Creek Blvd., Suite 1900
Dallas, Texas 75219
(214) 219-8828 (telephone)
(214) 219-8838 (facsimile)
dgresham@fineberglaw.com

**ATTORNEY *PRO SE***

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instruments was served on all counsel of record, pursuant to the Rules, on the 17th day of December, 2009.

Rogge Dunn                                    *Via Facsimile: (214) 220-3833*
Clouse Dunn Khoshbin LLP
1201 Elm Street, Suite 5200
Dallas, Texas 75270

**R. DEAN GRESHAM**

---

PLAINTIFF'S FIRST AMENDED PETITION, MOTION FOR LEVEL 3 DISCOVERY CONTROL PLAN,
AND REQUEST FOR DISCLOSURES                                                    PAGE 21



FINEBERG
GRESHAM

---

## CONFIDENTIAL RULE 408 SETTLEMENT DISCUSSIONS

*Via E-Mail and U.S. Mail*

Robert A. Skinner, Esq.                    *robert.skinner@ropesgray.com*
Ropes & Gray, LLP
One International Place
Boston, Massachusetts 02110

Authur H. Aufses III, Esq.                 *aaufses@kramerlevin.com*
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036

RE:   *Gresham v. ProShares Trust; ProShare Advisors, LLC; SEI Investment Distribution Co.; Michael L. Sapir; Louis M. Mayberg; Russell S. Reynolds, III; Michael Wachs; and Simon D. Collier*

Gentlemen:

I am an attorney in Dallas, Texas. I understand that you represent ProShares Trust, ProShare Advisors, LLC, and the related entities and individuals referenced above (hereinafter referred to as "ProShares"). Pursuant to Rule 408 of the Federal Rules of Civil Procedure, I am writing to make a pre-litigation demand in an effort to avoid the time and expense of protracted litigation against your respective clients.

Pursuant to ProShares' Registration Statement, I purchased 900 shares of ProShares' UltraShort MSCI Emerging Markets Fund ("EEV Fund") on November 21, 2008 for a total cost of $94,509.99. On November 25, 2009, I purchased an additional 600 shares of EEV for a total cost of $48,099.99, yielding a total investment in the EEV Fund of $142,609.98. Today, my investment in the EEV Fund is valued at approximately $20,000.00.

I trust you are intimately familiar with the deceptive manner in which the EEV Fund was marketed to investors, including myself, and the pending litigation regarding the EEV Fund.



**EXHIBIT**
**B**

APP 070

Robert A. Skinner, Esq.
Authur H. Aufses III, Esq.
September 17, 2009
Page 2

The EEV fund is a defective investment product and does not perform in the manner in which it is represented and marketed.

ProShares failed to warn me that holding the EEV Fund for more than one day would most certainly lead to the enormous under-performance and losses that I have sustained. Why?  Ostensibly because ProShares could not disclose the true facts about the EEV Fund while still successfully marketing the EEV Fund to investors.  As ProShares knows, investors, including myself, do not view ETFs as "day-trading" investment vehicles and do not engage in day-trading type activities.  Furthermore, it would be virtually impossible for all investors in the EEV Fund to sell all of their shares at the end of one day or trading session.  Clearly, no reasonable investor would have purchased shares in the EEV Fund had ProShares disclosed that the fund was not appropriate for long-term investors.

As you are aware, ProShares' Chairman has publicly touted that investors can use ProShares' ETFs "for more than a day successfully."  ProShares' Registration Statement goes so far as providing a hypothetical example of fees that an investor may encounter over a one, five or ten year period, indicating that long-term investment in the fund is a perfectly reasonable investment strategy for long-term investors such as myself.  Nothing could be further from the truth.  In addition to the publicly available information, I happen to possess certain private e-mail correspondence from ProShares' representatives that is not in the public domain and that I have not shared with any other person.

As you know, on June 11, 2009, the Financial Industry Regulatory Authority ("FINRA") issued Regulatory Notice 09-31 (the "FINRA Notice").  The FINRA Notice cautioned that "inverse and leveraged ETFs . . . typically are unsuitable for retail investors who plan to hold them for longer than one trading session, particularly in volatile markets."  FINRA admonished those who deal in non-traditional ETFs that sales materials related to leveraged and inverse ETFs, like the EEV Fund, "must be fair and accurate."  Thereafter, FINRA spokesman Herb Perone stated: "Exotic ETFs, such as inverse, leveraged and inverse-leveraged ETFs, are extremely complicated and confusing products . . . ."

On July 13, 2009, FINRA issued additional warnings via podcast on its website.  In that warning, FINRA reiterated that most leveraged and inverse ETFs, like EEV, reset each day and are designed to achieve their stated objective on a daily basis—but with the effects of compounding over a longer timeframe, results differ signifcantly.  In spite of this admonishment and clear results to the contrary, ProShares' Chairman, Michael L. Sapir, maintained that ProShares' leveraged and inverse ETFs can be used **"for more than a day successfully."**

Robert A. Skinner, Esq.
Authur H. Aufses III, Esq.
September 17, 2009
Page 3

Since FINRA's warnings were issued, brokerage firms, including Edward Jones & Co. halted the sale of its non-traditional, leveraged ETFs, like the EEV Fund.  Edward Jones called ETFs like the EEV Fund "one of the most misunderstood and potentially dangerous types of ETFs."   UBS and many other brokerage firms have now stopped trading ETFs that use leverage or sell an underlying asset short or long.  Similarly, Raymond James, Ameriprise Financial, and LPL Investment Holdings, Inc. have prohibited the sale of leveraged ETFs, like the EEV Fund, that seek twice the long or short performance of their target index.

On July 30, 2009, the *Wall Street Journal* reported that Charles Schwab ("Schwab") issued an unusual warning on July 28 to its clients who purchase non-traditional ETFs. Schwab warned its customers that "it is extremely important to understand that, for holding periods longer than a day, these funds may not give you the returns you may be expecting . . . . Proceed with extreme caution."  ProShares' statements in its Registration Statement does not even come close to the "proceed with extreme caution" level of clarity now required of the brokerage houses.

As you know, both the letter and the spirit of the federal and Texas securities laws require complete and unrestricted disclosure of material facts.  ProShares, however, violated the letter and spirit of the registration requirements of the Securities Act: "to protect investors by promising full disclosure of information thought necessary to informed investment decisions."

Clearly, ProShares failed to disclose, *inter alia*, the following risks in its Registration Statement:

1. The extent to which performance of the EEV Fund would inevitably diverge from the performance of the MSCI—i.e, the probability, if not certainty, of a significant tracking error;
2. The extent to which performance of the EEV fund materially diverges from the performance of the MSCI on a daily basis in certain situations;
3. Mathematical compounding prevents the EEV Fund from achieving its stated objective over a period of time greater than one day;
4. Once an index falls and the EEV Fund moves in the opposite direction, the index and the fund no longer share their original mathematical relationship;
5. Wide divergence and/or inverse correlation between the EEV Fund and the MSCI over time would happen in the rarest of circumstances, and inadvertently if at all;
6. The severe consequences of high market volatility of the EEV Fund's investment objective and performance;

Robert A. Skinner, Esq.
Authur H. Aufses III, Esq.
September 17, 2009
Page 4

7. The consequences of the EEV Fund's daily hedge adjustment always going in the same direction as the movement of the underlying index, notwithstanding that it is an inverse leveraged ETF;

8. The EEV Fund causes dislocations in the stock market;

9. The severe consequences of inherent path dependency in periods of high market volatility of the EEV Fund's performance;

10. The role the EEV Fund play in increasing market volatility, particularly in the last hour of the trading day; and

11. The EEV Fund offers a seemingly straightforward way to obtain desired exposure, but such exposure is not attainable through the EEV Fund.

As a proximate result of ProShares' failure to disclose and its material misrepresentations, I held the EEV Fund in my portfolio for almost one year anticipating that it would perform in the manner in which it was represented. Unfortunately, it has never done so and never will. As such, I am writing in good faith in attempt to resolve my dispute with ProShares informally and without the time and expense of protracted litigation.

If ProShares is interested in attempting to resolve this problem pre-suit, I appreciate you letting me know by Friday, October 9, 2009. Failing which, I will proceed to assert and protect my legal rights. Thank you for your attention to this matter. I look forward to your response.

Very truly yours,

R. Dean Gresham

APP 073

**Pending New York Securities Class Actions**

1.  Novick v. ProShares Trust et al., No. 09-cv-6935-JGK

2.  Sankowich v. ProShares Trust et al., No. 09-cv-7356-JGK

3.  McBride v. ProShares Trust et al., No. 09-cv-7392-JGK

4.  Hirth v. ProShares Trust et al., No. 09-cv-7505-JGK

5.  Marconi v. ProShares Trust et al., No. 09-cv-8189-JGK

6.  Bolton v. ProShares Trust et al., No. 09-cv-8200-JGK

7.  Chen v. ProShares Trust et al., No. 09-cv-8202-JGK

8.  Knobel v. ProShares Trust et al., No. 09-cv-8293-JGK

9.  Normand v. ProShares Trust et al., No. 09-cv-8327-JGK

10. Worden v. ProShares Trust et al., No. 09-cv-8662-JGK

11. Solars v. ProShares Trust et al., No. 09-cv-8926-JGK

12. Setyan v. ProShares Trust et al., No. 09-cv-8953-JGK

13. Setyan v. ProShares Trust et al., No. 09-cv-8954-JGK

14. Vidrine v. ProShares Trust et al., No. 09-cv-8957-JGK

15. Piplica v. ProShares Trust et al., No. 09-cv-8958-JGK

16. Kaiser v. ProShares Trust et al., No. 09-cv-9077-JGK

17. Bowman v. ProShares Trust et al., No. 09-cv-9109-JGK

18. Rhoads v. ProShares Trust et al., No. 09-cv-9110-JGK

19. Pacifico v. ProShares Trust et al., No. 09-cv-9134-JGK

20. Setyan v. ProShares Trust et al., No. 09-cv-9148-JGK

21. Setyan v. ProShares Trust et al., No. 09-cv-9168-JGK

22. Setyan v. ProShares Trust et al., No. 09-cv-9300-JGK

23. Pacifico v. ProShares Trust et al., No. 09-cv-9427-JGK

24. Annunziato v. ProShares Trust et al., No. 09-cv-9593-JGK

25. Spenceley v. ProShares Trust et al., No. 09-cv-9942-UA

26. Haber v. ProShares Trust et al., No. 09-cv-10069-UA

EXHIBIT

**C**

CAUSE NO. 09-14776

| | | |
|---|---|---|
| RONALD GRESHAM, | § | IN THE 44TH JUDICIAL |
|      Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| SEI INVESTMENTS MANAGEMENT | § | DISTRICT COURT OF |
| CORP., SEI INVESTMENTS CO., SEI | § | |
| INVESTMENTS DISTRIBUTION CO., | § | |
| PROSHARE ADVISORS, LLC, AND | § | |
| PROSHARES TRUST, | § | |
|      Defendants. | § | DALLAS COUNTY, TEXAS |

## NOTICE OF FILING NOTICE OF REMOVAL

YOU ARE HEREBY NOTIFIED that the attached copy of the Notice of Removal to the United States District Court for the Northern District of Texas, Dallas Division, has been filed with the Clerk of said District Court in Dallas, Texas, on this 17th day of December, 2009. Pursuant to 28 U.S.C. § 1446, Defendants, SEI INVESTMENTS MANAGEMENT CORP., SEI INVESTMENTS CO., SEI INVESTMENTS DISTRIBUTION CO., PROSHARE ADVISORS, LLC, AND PROSHARES TRUST, respectfully request that this Court proceed no further in this cause unless and until the action is remanded to state court.

DATED this 17th day of December, 2009.

Respectfully submitted,

**ROGGE DUNN**
State Bar No. 06249500
Email:  rdunn@cdklawyers.com
**GREGORY M. CLIFT**
State Bar No. 00795835
Email:  gclift@cdklawyers.com
**CLOUSE DUNN KHOSHBIN LLP**
1201 Elm St., Suite 5200
Dallas, TX  75270-2142
Telephone:    (214) 220-3888
Facsimile      (214) 220-3833

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument was served on all counsel of record, pursuant to the Rules, on the _17th_ day of December, 2009.

**R. Dean Gresham - Pro Se**
Fineberg/Gresham
3811 Turtle Creek Blvd., Suite 1900
Dallas, Texas 75219

☑ **VIA HAND DELIVERY**
☐ **VIA FAX (214) 219-8838**
☐ **VIA EMAIL:** dgresham@fineberglaw.com
☐ **VIA FIRST CLASS MAIL**
☐ **VIA CERTIFIED MAIL, RRR**

R. ROGGE DUNN
GREGORY M. CLIFT