IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONALD GRESHAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil A. No. 3:09-cv-02406-D |
| | § | |
| SEI INVESTMENTS MANAGEMENT | § | |
| CORP., SEI INVESTMENTS CO., SEI | § | |
| INVESTMENTS DISTRIBUTION CO., | § | |
| PROSHARE ADVISORS, LLC, AND | § | |
| PROSHARES TRUST, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................2

ARGUMENT ....................................................................................................................6

I.    APPLICABLE LAW............................................................................................6

II.    THIS COURT HAS DIVERSITY JURISDICTION ...........................................8

CONCLUSION................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alfridawi v. Switzer*,
  No. 3:02-CV-1659-M, 2002 WL 31370479 (N.D. Tex. Oct. 18, 2002) .............................. 8, 9

*Burns v. Windsor Ins. Co.*,
  31 F.3d 1092 (11th Cir. 1994) ........................................................................................... 7

*Cardona v. Life Ins. Co. of N. Am.*,
  No. 3:09-CV-0833-D, 2009 WL 3199217 (N.D. Tex. Oct. 7, 2009) ................................. 8

*Cronin v. State Farm Lloyds*,
  Civ. A. No. H-08-1983, 2008 WL 4649653 (S.D. Tex. Oct. 10, 2008) ............................ 7

*De Aguilar v. Boeing Co.*,
  47 F.3d 1404 (5th Cir. 1995) ..................................................................................... passim

*Diles v. Clayborne*,
  No. 3:07-CV-1822-G, 2008 WL 161010 (N.D. Tex. Jan. 16, 2008) ................................ 11

*Lozano v. Schoellerman*,
  No. H-08-3069, 2009 WL 211080 (S.D. Tex. Jan. 28, 2009) ........................................... 8

*Ray Mart, Inc. v. Stock Bldg. Supply of Tex., L.P.*,
  435 F. Supp. 2d 578 (E.D. Tex. 2006) ..................................................................... 7, 9, 10

*St. Paul Reinsurance Co. v. Greenberg*,
  134 F.3d 1250 (5th Cir. 1998) .......................................................................................... 10

*Troiani v. Allstate Ins. Co.*,
  No. Civ. A. B-06-00067, 2006 WL 1851378 (S.D. Tex. July 3, 2006) ................... 6, 7, 9, 10

*Vidaurri v. H.M.R. Props.*,
  No. SA-06-CA-1124-FB, 2007 WL 1512029 (W.D. Tex. Mar. 8, 2007) ..................... 7, 12

*Viera v. Sprint United Mgmt. Co.*,
  No. 3:02-CV-1575-H, 2003 WL 251930 (N.D. Tex. Jan. 31, 2003) ................................. 8

**STATUTES**

28 U.S.C. § 1332 ........................................................................................................................ 6, 9

28 U.S.C. § 1404 ................................................................................................................................ 2

28 U.S.C. § 1441 ................................................................................................................................ 6

Defendants SEI Investments Management Corp., SEI Investments Co., SEI Investments Distribution Co., ProShare Advisors LLC, and ProShares Trust (collectively, "Defendants") hereby submit this memorandum of law in support of their opposition to Plaintiff's Motion to Remand.

In September 2009, after taking note of several class actions pending against certain of the Defendants in federal court, including an action involving the very fund in which he had invested, Plaintiff Ronald Gresham sent Defendants' counsel an unsolicited demand letter stating that he had suffered "enormous" losses exceeding $120,000 through his purchase of 1,500 shares of the ProShares UltraShort MSCI Emerging Markets Fund (the "EEV Fund"), and asserting that the ProShares Trust Registration Statement (the "Registration Statement") violated "the letter and the spirit" of the federal securities laws.

The next month, Plaintiff filed a complaint in Texas state court asserting that he had purchased an unspecified number of EEV shares, but purporting to seek damages of only $6,513 based upon his sale of only 70 EEV shares. In a series of subsequent actions – including the hasty filing of an Amended Petition that removed any reference to the Registration Statement, and the submission of a post-removal affidavit in which he conditionally "agrees to stipulate" not to seek more than $75,000 – Plaintiff has repeatedly attempted to evade federal jurisdiction, while knowing full well that his claim easily exceeds the jurisdictional amount. Because the preponderance of the evidence establishes that the amount in controversy exceeds $75,000, Defendants respectfully requests that the Court deny Plaintiff's Motion to Remand.

## BACKGROUND

*The New York Actions*

Since August 5, 2009, twenty-seven[1] putative securities class actions (the "New York Actions") involving ProShares funds have been filed in the United States District Court for the Southern District of New York and are now pending before or have been referred to the Honorable John G. Koeltl. *See* D. Opp. App. 4-5, ¶ 3; Transfer Mem. 2-4; D. Transfer App. 1-2, ¶¶ 3-6.[2]  Given this pending litigation, Defendants have filed a motion to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404.  *See* Dkt. Nos. 9-10.  As set forth more fully in that motion, the complaints in the New York Actions are substantially similar to each other and to Plaintiff's Amended Petition:

- All of the New York Actions were brought by investors who – like Plaintiff – purchased shares in one or more "Ultra" or "UltraShort" ETFs offered by ProShares Trust.  *See* Transfer Mem. 3-4.

- Each New York plaintiff, like Plaintiff here, asserts that the defendants failed adequately to disclose that ProShares's ETFs were not suitable for long-term investment.  Transfer Mem. 10; D. App. 57-58.

- Each New York Action asserts violations of Sections 11 and 15 of the Securities Act of 1933.  Transfer Mem.4; D. Transfer App. 2, ¶ 6.

- All of the New York Actions name the same defendants, including three of the defendants named here – ProShares Trust, ProShare Advisors, and SEI Investments Distribution Co.  Transfer Mem. 2; D. Transfer App. 1, ¶ 3.

- Each of the New York Actions involves a single registration statement and incorporated prospectus, filed with the Securities and Exchange Commission ("SEC") and updated at least annually.  *See* Transfer Mem. 3; D. Transfer. App. 2, ¶ 4.

---

[1] Two other actions in the Southern District of New York have been voluntarily dismissed.  *See Gentile v. ProShares Trust*, No. 09-cv-10038-JGK; *Haber v. ProShares Trust*, No. 09-cv-10069-JGK.

[2] Defendants cite to pages in their Appendix in Support of Amended Notice of Removal (Dkt. Nos. 6-2 and 6-3) as "D. App. __."  Defendants cite to pages in Plaintiff's Appendix in Support of Plaintiff's Motion to Remand (Dkt. No. 12) as "P. App. __."  Defendants cite to pages in their Appendix in Support of Their Opposition to Plaintiff's Motion to Remand, filed herewith, as "D. Opp. App. __."  Defendants cite to pages in their Memorandum of Law in Support of Their Motion to Transfer Venue (Dkt. No. 10) as "Transfer Mem. __."  Defendants cite to pages in their Appendix in Support of Their Motion to Transfer Venue (Dkt. Nos. 10-2 to 10-5) as "D. Transfer App. __."

Among the ETFs at issue in the New York Actions is the EEV Fund, in which Plaintiff invested. Transfer Mem. 2-3.[3] While Plaintiff suggests that he "coincidentally" filed suit on the same date as the first-filed securities class action involving the EEV Fund, *see* Pl.'s Mot. to Remand ("Remand Mot.") (Dkt. No. 11), at 11 n.7, in fact, as set forth in Defendants' transfer papers, the first suit involving the EEV Fund was filed on September 2, 2009 in the District of Maryland, nearly two months before Plaintiff filed his Original Petition in state court on October 30, 2009. *See* Transfer Mem. 2-3; *see also Rhoads v. ProShares Trust et al.*, No. 09-cv-2328 (D. Md.) ("*Rhoads I*").[4]

Indeed, in September 2009, before filing suit, Plaintiff sent a letter to Defendants' counsel, as described further below, referring to "the pending litigation regarding the EEV Fund." D. App. 70. While Plaintiff disavows any connection with the attorneys involved in the New York Actions, Remand Mot. 11 n.7, he has made abundant use of their work product, as numerous passages in his petition appear to be copied near verbatim from the *Rhoads I*, *Rhoads II*, and other New York complaints. *Compare* D. App. 55, *with* D. Transfer App. 10, ¶ 6; *compare* D. App. 57, *with* D. Transfer App. 14, ¶ 21; *compare* D. App. 59, *with* D. Transfer App. 26-27, ¶ 67.

*Plaintiff's Demand Letter*

Just a few weeks after *Rhoads I* was filed on September 2, 2009, Plaintiff sent an unsolicited letter (the "Demand Letter") to counsel for the defendants in the New York Actions.[5]

---

[3] While two suits involving the EEV Fund were originally pending in the Southern District of New York, one of those suits – *Haber* – was voluntarily dismissed on December 8, 2009. *See* footnote 1, *supra*.

[4] *Rhoads I* was subsequently voluntarily dismissed, and a substantially similar complaint was re-filed by the same plaintiff in the Southern District of New York on October 30, 2009, where it remains pending. *See* Transfer Mem. 2-3; *Rhoads v. ProShares Trust et al.*, No. 09-cv-9110-JGK (S.D.N.Y.) ("*Rhoads II*").

[5] Dated September 17, 2009, the letter was apparently drafted just two weeks after *Rhoads I* was filed, but Plaintiff did not e-mail the letter to Defendants' counsel until September 25, 2009. *See* D. Transfer App. 3, ¶ 11.

3

*See* D. App. 70-73; Transfer Mem. 4-5. The letter sets forth the names of each of the eight defendants involved in the New York Actions, and is addressed to litigation counsel for the entity defendants and individual defendants in those actions. *See* D. App. 70; Transfer Mem. 4-5. In it, Plaintiff explains that in November 2008[6] – "[p]ursuant to ProShares' Registration Statement" – he purchased 1,500 shares of the EEV Fund, amounting to "a total investment in the EEV Fund of $142,609.98." D. App. 70. Plaintiff goes on to state that "[t]oday, my investment in the EEV Fund is valued at approximately $20,000.00." The Demand Letter thus indicates that Plaintiff's losses, which he characterizes as "enormous," *id.* at 71, easily exceed $75,000.

Throughout, the Demand Letter makes repeated reference to federal securities laws claims and the pending class action litigation. *See id.* at 70 (referring to purchase "[p]ursuant to ProShares' Registration Statement"); *id.* (referring to "the pending litigation regarding the EEV Fund"); *id.* at 71 (referring to statements in ProShares's Registration Statement); *id.* at 72 (referring to "the letter and the spirit of the federal and Texas securities laws" and "the registration requirements of the Securities Act"); *id.* (listing risks allegedly not disclosed in the ProShares Trust Registration Statement).

*State Court Proceedings*

On October 30, 2009, Plaintiff filed an Original Petition in state court, alleging negligent misrepresentation, fraud by nondisclosure, strict products liability, and joint enterprise liability. *See* D. App. 5-27. Plaintiff asserted that he had lost "over six thousand dollars" in his investment in the EEV Fund. *Id.* at 5. Plaintiff alleged that he had purchased an unspecified number of EEV shares in November 2008 at $105 per share, and further alleged that he had sold 70 of those

---

[6] Although the Demand Letter refers to a purchase on November 25, 2009, Plaintiff presumably meant to refer to November 25, 2008, as his letter was written in September 2009. *See* D. App. 70.

shares at $11.95, for a loss of $6,513. *Id.* at 6. Like the Demand Letter, Plaintiff's Original Petition makes reference throughout to the ProShares Trust Registration Statement as the source of Defendants' alleged omissions and misrepresentations. D. App. 6 (referring to "false and misleading Registration Statement, Prospecutses, and/or Statements of Additional Information"); *id.* at 11 (alleging "misrepresentations contained in the Defendants' Registration Statement"); *id.* at 15-16 (same). Indeed, the Original Petition premises Plaintiff's negligent misrepresentation claim upon the Registration Statement. *See id.* at 21 (identifying representations underlying negligent misrepresentation claim as those "in the Registration Statement for the EEV Fund"). As of October 30, 2009, the price of the EEV Fund was approximately $14 per share. *See* D. Opp. App. 5, ¶ 4.

On December 16, 2009, counsel for Defendants informed Plaintiff as a professional courtesy that Defendants intended to remove the action to federal court. D. Opp. App. 5, ¶ 5. In a transparent effort to avoid federal jurisdiction, Plaintiff hastily removed any reference to the ProShares Trust Registration Statement from his complaint,[7] and filed an Amended Petition in state court the very next day, just minutes before Defendants filed their Original Notice of Removal. *See* Am. Not. of Removal 1-2; D. Opp. App. 5-6, ¶¶ 6-7. On December 18, 2009, Defendants filed an Amended Notice of Removal. As of December 18, 2009, the price of the EEV Fund was $11.72 per share. *See* D. Opp. App. 5, ¶ 4. Plaintiff filed the instant Motion to Remand on December 31, 2009.

---

[7] For example, while Plaintiff's Original Petition asserts that the "Registration Statement does not disclose, or fails to emphasize, that the EEV Fund must be sold within one day," the Amended Petition refers only vaguely to "Defendants' marketing materials." *Compare* D. App. 16, *with id.* at 58.

5

# ARGUMENT

I. **Applicable Law**

Under 28 U.S.C. § 1441, a party may remove any civil action from state court to federal district court if the action is one over which the federal court possesses original jurisdiction. Pursuant to 28 U.S.C. § 1332, diversity jurisdiction exists when the amount in controversy exceeds $75,000, and the action is between citizens of different states. "'Unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (quoting *St. Paul Mercury Indem. Co. v. Red Cab. Co.*, 303 U.S. 283, 288 (1938)).

Courts within the Fifth Circuit, however, have recognized that claims "for less than the jurisdictional amount may be considered bad faith claims if the Plaintiff has knowledge that the claims may result in recovery of an amount greater than $75,000; such bad faith claims do not prevent removal to federal court." *Troiani v. Allstate Ins. Co.*, No. Civ. A. B-06-00067, 2006 WL 1851378, at *1 (S.D. Tex. July 3, 2006) (denying motion to remand where "Plaintiff's attempt to limit his recovery . . . constitutes a transparent attempt to evade federal jurisdiction"). In states like Texas that "do not limit damage awards to the amount specified in the *ad damnum* clause of the state pleading," plaintiffs may "plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading." *De Aguilar*, 47 F.3d at 1410; *see also id*. at 1408 (denying motion to remand where plaintiffs claimed that they sought damages below the jurisdictional amount in an "attempt[] to avoid federal jurisdiction").

In such cases, the Fifth Circuit has held that "if a defendant can show that the amount in controversy actually exceeds the jurisdictional amount, the plaintiff must be able to show that, as

6

a matter of law, it is certain that he will not be able to recover more than the damages for which he has prayed in the state court complaint." *Id.* at 1411. The defendant must establish the amount in controversy by a preponderance of the evidence. *Id.* at 1412; *Vidaurri v. H.M.R. Props.*, No. SA-06-CA-1124-FB, 2007 WL 1512029, at *4 (W.D. Tex. Mar. 8, 2007) ("When a defendant removes a suit in which plaintiff's complaint seeks damages below the minimum federal jurisdictional amount, defendant . . . has the burden to show the amount in controversy actually exceeds the jurisdictional amount . . . by a preponderance of the evidence." (internal quotation marks omitted)).[8] "The Fifth Circuit has looked to pre-suit demand letters as evidence of the amount in controversy." *Cronin v. State Farm Lloyds*, Civ. A. No. H-08-1983, 2008 WL 4649653, at *3 (S.D. Tex. Oct. 10, 2008) (denying motion to remand).

Once defendant establishes by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount, the plaintiff must establish to a "legal certainty" that "he will *not be able to* recover more than the jurisdictional amount." *Troiani*, 2006 WL 1851378, at *2 (emphasis added). If plaintiff's claims are "of the type that are worth more than [the jurisdictional amount], they can be removed unless the plaintiff can show he is *legally bound* to accept less." *Ray Mart, Inc. v. Stock Bldg. Supply of Tex., L.P.*, 435 F. Supp. 2d 578, 586 (E.D. Tex. 2006) (internal quotation marks omitted, emphasis added). The plaintiff cannot rely on filings made after the case has been removed to establish that his damages will not reach the jurisdictional amount; instead, the plaintiff "must make all information [relevant to jurisdiction] known at the time he files the complaint." *De Aguilar*, 47 F.3d at 1412. Plaintiff may "cite, for example, to a state law that prohibits recovery of damages that exceed those requested in the *ad*

---

[8] Plaintiff relies heavily on a case from the Eleventh Circuit, *Burns v. Windsor Ins. Co.*, 31 F.3d 1092 (11th Cir. 1994). In *Burns*, however, the Eleventh Circuit adopted an entirely different standard from the Fifth Circuit. *See id.* at 1095-96 & n.6 (requiring defendant to "prove to a legal certainty that plaintiff's claim must exceed [the jurisdictional amount]" and distinguishing its approach from that of courts requiring defendants to establish jurisdictional amount by a preponderance of the evidence).

7

*damnum* clause and that prohibits the initial *ad damnum* to be increased by amendment," or might "file a binding stipulation or affidavit *with their complaints*" (emphasis added)). *Id.*

## II.  This Court Has Diversity Jurisdiction

The sole issue before the Court is the amount in controversy, as Plaintiff concedes that the parties are diverse. Remand Mot. 5. The procedural history of the case and Plaintiff's conduct establish by a preponderance of the evidence that the amount in controversy well exceeds $75,000, and that Plaintiff has been engaged in various machinations to avoid federal jurisdiction.

First, Plaintiff's Demand Letter plainly sets forth investment losses of over $120,000. Courts in this District and elsewhere within the Fifth Circuit have frequently relied on pre-suit demand letters as evidence of the amount in controversy. *See, e.g.*, *Lozano v. Schoellerman*, No. H-08-3069, 2009 WL 211080, at *2 (S.D. Tex. Jan. 28, 2009) (denying motion to remand based on conclusion that pre-removal settlement demand, *inter alia*, "demonstrate[d] that it is more likely than not that Plaintiff's claims exceed $75,000, exclusive of interest and costs"); *Cardona v. Life Ins. Co. of N. Am.*, No. 3:09-CV-0833-D, 2009 WL 3199217, at *3 (N.D. Tex. Oct. 7, 2009) (denying motion to remand where "plaintiffs' pre-suit demand letter contained damages estimates that far exceed the jurisdictional minimum"); *Alfridawi v. Switzer*, No. 3:02-CV-1659-M, 2002 WL 31370479, at *1 (N.D. Tex. Oct. 18, 2002) (same).

Second, while Plaintiff contends that he "has only sued for his actual, realized damages of $6,513," and – without citing any authority – baldly asserts that the Court cannot determine or even consider his unrealized losses in establishing the jurisdictional amount, *see* Remand Mot. 6, 8, in fact, the opposite is true. Courts often consider unrealized damages when establishing the amount in controversy, particularly in actions removed from Texas state court. *See, e.g.*, *Viera v. Sprint United Mgmt. Co.*, No. 3:02-CV-1575-H, 2003 WL 251930, at *2 (N.D. Tex. Jan. 31,

8

2003) (observing that attorney's fees are unliquidated damages and considering the likely amount of such damages in determining the amount in controversy); *see also De Aguilar*, 47 F.3d at 1410 (noting that rules prohibiting plaintiffs from pleading specific amounts in cases of unliquidated damages "have created the potential for abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more," in order to circumvent federal jurisdiction).

According to Plaintiff's Demand Letter, he purchased 1,500 shares of the EEV Fund in November 2008, at a total cost of approximately $143,000. D. App. 70. He has sold 70 shares at $11.95, for a total of $836.50. D. App. 50. Plaintiff thus continues to hold 1,430 shares. As of December 18, 2009, the date on which Defendants' filed their Amended Notice of Removal, the price of the EEV Fund was $11.72 per share, which would yield approximately $16,760. *See* D. Opp. App. 5, ¶ 4.[9] Based on Plaintiff's initial investment, Plaintiff's unrealized losses easily exceeded $75,000 on the date of removal. In fact, Plaintiff's unrealized losses were well in excess of $75,000 on every date between the filing of Plaintiff's Original Petition on October 30, 2009, and the filing of Defendants' Amended Notice of Removal on December 18, 2009. *See* D. Opp. App. 5, ¶ 4. Combined with Plaintiff's Demand Letter, these facts establish by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional amount set forth in 28 U.S.C. § 1332. *See, e.g.*, *Alfridawi*, 2002 WL 31370479, at *1 (finding it "reasonable to infer" that damages would exceed jurisdictional amount based upon claims asserted and amount alleged in pre-suit demand letter submitted with defendants' response to remand motion). Plaintiff's prayer for damages of only $6,513 – made "with the knowledge that the claim is actually worth more" – is plainly disingenuous. *See De Aguilar*, 47 F.3d at 1410

---

[9] Jurisdictional facts are determined as of the time of removal. *See, e.g.*, *Ray Mart, Inc.*, 435 F. Supp. 2d at 2006; *Troiani*, 2006 WL 1851378, at *5.

9

(characterizing such claims as "bad faith").

Close examination of the record in this case further highlights Plaintiff's transparent attempts to avoid federal jurisdiction. *See St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1254 n.18 (5th Cir. 1998) (noting the court's "vigilan[ce] to the potential for manipulation by the plaintiff who prays for damages below the jurisdictional amount even though he knows that his claim is actually worth more"). While Plaintiff claims he has only "sustained actual damages of $6,513" and has not "[t]o date . . . sustained or realized any other loss or damages related to the EEV Fund," Remand Mot. 3, his affidavit makes clear that he intends to "seek damages from Defendants" based on any future realized losses he sustains, and purports to limit his potential damages not to $6,513, but to the jurisdictional amount of $75,000. P. App. 2, ¶ 13. *See Troiani*, 2006 WL 1851378, at *4 & n.5 ("The Court's conclusion that the Plaintiff is attempting to evade federal jurisdiction is bolstered by the fact that, in his affidavit, Plaintiff raises the amount of recovery sought to a sum even closer to the jurisdictional minimum.").

In a final effort to avoid federal jurisdiction, Plaintiff stipulates – or rather, "agree[s] to stipulate" – that he will not seek damages in excess of $75,000, though only "[i]n the event the Court considers the amount of [his] unrealized position in the EEV Fund." P. App. 2, ¶ 13. Plaintiff's post-removal and seemingly conditional assertion is irrelevant to the Court's jurisdictional analysis. *See, e.g.*, *Troiani*, 2006 WL 1851378, at *5 (rejecting as "ineffective" affidavit submitted with plaintiff's remand motion asserting that damages would not exceed $74,000 as well as plaintiff's stipulation accepting remittitur if damages exceeded jurisdictional amount); *Ray Mart*, 435 F. Supp. 2d at 588 ("Plaintiffs' affidavits, submitted with their motion to remand, claiming that their damages do not exceed $75,000, are insufficient to deprive this court of subject matter jurisdiction."); *Diles v. Clayborne*, No. 3:07-CV-1822-G, 2008 WL 161010, at

10

*3 (N.D. Tex. Jan. 16, 2008) (holding that plaintiff's "post-removal assertion that the amount in controversy is less than $75,000 cannot be considered on the question of subject matter jurisdiction").

      Plaintiff's attempt to manipulate his way around federal jurisdiction is also apparent from the substantive changes he has made to his complaint. *See* Am. Not. of Removal (Dkt. No. 6), at 1-2. As set forth above, when notified that Defendants intended to remove to federal court, Plaintiff quickly deleted any references to the ProShares Trust Registration Statement from his Original Petition and filed an Amended Petition the next day. In so doing, however, Plaintiff has only succeeded in making his complaint less detailed, as he does not allege any other source of alleged misrepresentation or omission regarding the EEV Fund, nor could he – as the Fund's Registration Statement and incorporated Prospectus are the primary means by which such federally registered funds are marketed and sold. Plaintiff asserts that his Amended Petition "clarifies" that his claims arise from "other misrepresentations . . . in addition to those contained in the Registration Statement," and makes cryptic reference to "certain e-mail communications . . . that are not in the public domain." Remand Mot. 5 n.4. Those e-mails, however, appear nowhere in the Amended Petition, nor does Plaintiff anywhere "clarify" the source of those "other misrepresentations." Plaintiff's removal of any reference to the Registration Statement is not intended to "clarify" his claim, but instead to avoid the reach of the federal securities laws, which – as he well knows, *see* D. App. 70 – regulate the veracity of disclosures in the Registration Statement.

      In sum, the procedural history of the case and the evidence before the Court establish by a preponderance that the amount in controversy easily exceeds $75,000 and that Plaintiff's prayer for less has not been made in good faith. Plaintiff has not – and cannot – establish to a

"legal certainty" that the amount in controversy is below $75,000.  Plaintiff's Amended Petition does not cite to any state law limiting his recovery to $6,513 or precluding him from amending his *ad damnum* clause, nor could it, as Texas law does not limit the amount of damages that plaintiffs can recover to the amount they asked for in their complaint.  *De Aguilar*, 47 F.3d at 1412-13; *Vidaurri*, 2007 WL 1512029, at *6.  "Absent such a statute, litigants who want to prevent removal must file a binding stipulation or affidavit *with their complaints*," which Plaintiff failed to do.  *De Aguilar*, 47 F.3d at 1412 (emphasis added, internal quotation marks) (noting that later filings are "irrelevant").

## **CONCLUSION**

For the foregoing reasons, and on the grounds set forth in Defendants' Amended Notice of Removal, Defendants respectfully request that the Court deny Plaintiff's Motion to Remand.


Dated:  January 25, 2010                                      Respectfully submitted,

**ROGGE DUNN**
State Bar No. 06249500
Email: rdunn@cdklawyers.com
**GREGORY M. CLIFT**
State Bar No. 00795835
Email: gclift@cdklawyers.com
**CLOUSE DUNN KHOSHBIN LLP**
1201 Elm Street, Suite 5200
Dallas, TX 75270-2142
Telephone: (214) 220-3888
Facsimile (214) 220-3833

/s/ Robert A. Skinner
**ROBERT A. SKINNER** (*pro hac vice*)
Email: robert.skinnner@ropesgray.com
**ROPES & GRAY LLP**
One International Place
Boston, MA 02110
Telephone: (617) 951-7000
Facsimile: (617) 951-7050

**ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served upon all counsel of record on this 25th day of January, 2010 via filing through the Court's ECF system.

/s/ Robert A. Skinner
Robert A. Skinner